# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUSTIN ANTHONY MENARD,

        Defendant-Appellant.

UNPUBLISHED
November 3, 2015

No. 321688
Delta Circuit Court
LC No. 13-008870-FH

Before: Markey, P.J., and Stephens and Riordan, JJ.

Per Curiam.

Defendant appeals as of right his jury trial conviction of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to 7 to 25 years' imprisonment. We affirm.

It is undisputed that defendant engaged in sexual penetration with the complainant when he drove her back to her car after they had attended a bonfire together. The issue at trial was whether the complainant consented.

## I. BACKGROUND

There is no dispute in this case regarding four salient points: 1) that complainant and defendant had a longstanding relationship; 2) that in the days before the assault they exchanged sexually explicit visual texts; 3) that there was both digital and vaginal penetration; and 4) that the announced purpose for complainant and defendant meeting that evening was to facilitate the sale of an amplifier. The focus of this CSC case is on the issue of consent.

The testimony regarding what transpired at the bonfire was hotly disputed. Complainant asserted that there was no talk that night about having sex, and that she and defendant did not kiss or engage in sexual behavior. Defendant testified that he and complainant engaged in mutual hugging, and goofed around and giggled "like high school kids." The sexual contact occurred after the bonfire when defendant drove complainant back to his uncle's house to retrieve her car from a darkened place behind the garage where no other persons were present. Testimony diverged again with complainant testifying in detail that the assault was not consensual and defendant testifying that consent was given. According to complainant's fiancé, complainant arrived home with a look of fear and shock on her face. Complainant went to Escanaba Public Safety and reported the incident, and then went to a hospital emergency room,

-1-

where a sexual assault nurse examined her. Public safety officers testified as to interviews with defendant in which he gave varied accounts of the incident. Additionally, sexual assault counselors gave testimony both about the complainant, and post sexual assault behaviors of victims. The prosecution tendered a witness who gave 404(b) testimony regarding a prior assault by defendant. The defense offered witnesses who refuted much of the 404(b) testimony.

## II. MRE 404(b) TESTIMONY

Defendant first argues that the trial court abused its discretion by admitting MRE 404(b) other acts evidence, because it was unduly prejudicial and too dissimilar to the charged act to justify admission. We review a trial court's admission of other bad acts evidence for an abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). An abuse of discretion occurs when the trial court's decision is outside the range of reasoned and principled outcomes. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). An error in the admission of bad acts evidence does not require reversal unless it affirmatively appears that the error was outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

Other acts evidence is admissible if it is relevant and offered for a proper purpose, and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). A proper purpose is one that requires the factfinder to make an intermediate inference other than one about a defendant's character or criminal propensity. *Id*. at 87. Other acts evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence. MRE 401. "A material fact is one that . . . is within the range of litigated matters in controversy." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000) (internal quotations and citation omitted). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich at 398.

The prosecutor offered other acts testimony to show motive, intent, absence of accident or mistake, scheme or system in doing an act. See MRE 404(b)(1). The prosecutor contended that the testimony would show that defendant had committed sexual assault according to a particular pattern that made it difficult for his victims to prove nonconsent; that is, he initiated friendly contact in a social setting, then isolated and sexually assaulted his victims. See *People v Oliphant*, 399 Mich 472; 250 NW2d 443 (1976). Because the other acts evidence addressed the disputed issue of consent, the trial court determined that its probative value was high and not substantially outweighed by its prejudicial effect, and admitted the other acts evidence.

Defendant argues that the other acts evidence was too dissimilar to justify admission. "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts . . . ." *Sabin,* 463 Mich at 65-66, quoting *People v Ewoldt*, 7 Cal 4th 380, 403; 867 P2d 757 (1994). However, other acts evidence need not be identical to the charged crime to be admissible under MRE 404(b). *Sabin*, 463 Mich at 67. The other acts evidence showed that defendant socialized with the witness and her best friend, whom defendant was dating, and took advantage of being alone in an upstairs bedroom with the witness to pin her down onto the bed forcibly with one hand while putting his

other hand down her pants. Defendant stopped the assault when he heard someone ascend the stairs. Defendant socialized with complainant, and similarly assaulted her when she was isolated from others.

We note that there are dissimilarities between the two incidences and that reasonable people could disagree "on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system," *id*., at 67, or whether they simply constituted "similar spontaneous acts," *id*., at 65-66. We do find, however, that the probative value of this evidence is marginal and that the prejudicial effect far outweighs its value. However, reversal is not required because it does not affirmatively appear that the error was outcome determinative. *Knapp*, 244 Mich App at 378. This was not a case where the only evidence came from the defendant, the complainant and the 404(b) witness. The jury was also presented with defendant's changing version of the facts when he was interviewed by public safety officers, and the testimony of both sexual assault counselors and the complainant's fiancé regarding complainant's affect. The trial court instructed the jury that if it believed the witness's testimony, it could use it only to help judge the believability of complainant's testimony. The jury's acquittal of two CSC charges suggests that the panel gave little weight to the witness's testimony and believed, contrary to complainant's testimony, that some of the sexual activity was consensual.

## III. PROSECUTORIAL MISCONDUCT

Defendant also contends that there were two instances of prosecutorial misconduct arising from statements made by the prosecutor during closing arguments. Because defendant neither objected to the statements nor requested a curative instruction, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights, *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008), and reverse only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings, *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Defendant first takes issue with the prosecutor's assertion that the complainant's fiancé "came in here, and he did the best he could. He never manufactured any lies or he doesn't have—he was trying to help." Defendant claims this statement represents impermissible vouching for the fiancé's truthfulness. Defendant also takes issue with the prosecutor's characterization of the other acts witness as "vulnerable," claiming that the statement was an impermissible appeal to the jury's sympathy.

"Generally, prosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (internal quotation marks and citations omitted). They are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *People v Gonzalez*, 178 Mich App 526, 535; 444 NW2d 228 (1989). However, a prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness testified truthfully. *Bahoda*, 448 Mich at 276. In addition, "[i]t is improper for the prosecutor to appeal to the jury to sympathize with the victim." *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609, lv den 430 Mich 880 (1988). "A prosecutor's closing argument must be read as a whole to

determine whether the prosecutor improperly commented upon the evidence." *Gonzalez*, 178 Mich App at 535.

The prosecutor's comment with regard to complainant's fiancé was a fair comment on the witness's demeanor and testimony. The record shows that he was visibly upset on the stand. The court reporter had to hand him a tissue at one point, and the defense attorney asked more than once whether he could continue. The police also testified that the fiancé was upset when he talked to them, passing along some incorrect information that was difficult to discern though the witnesses sobs. In light of his testimony, the prosecutor's statements that the fiancé "came in here, and he did the best he could" was fairly a comment on his emotional demeanor. The prosecutor's statement that the fiancé "never manufactured any lies" was not an assertion of the truthfulness of the testimony, but an explanation of the incorrect information that the fiancé gave police, and a reasonable inference that he passed along what he thought the complainant had told him, although it turned out to be wrong. The prosecutor's statements did not convey that the prosecutor "had some special knowledge that the witness [was] testifying truthfully." *Bahoda*, 448 Mich at 276.

Likewise, the prosecutor's characterization of the other acts witness as "vulnerable" was not an impermissible appeal to the jury to sympathize with the witness and, through her, with complainant. *Dalessandro*, 165 Mich App at 581. Referring to the witness as "vulnerable" was consistent with the prosecution's theory about defendant's pattern of sexual assault. According to the prosecution, defendant targeted women rendered vulnerable by circumstances that made it difficult to prove nonconsent to sexual activity. It was to prove that pattern that the trial court admitted the other acts testimony under MRE 404(b). Therefore, the prosecution's statement related directly to its theory that defendant acted according to a pattern. *Bahoda*, 448 Mich at 282. Additionally, the jury heard testimony regarding the victim's traumatic youth and the fact that defendant was aware of those instances in her past.

For these reasons, we find there was no prosecutorial misconduct. Even if either statement could be construed to constitute prosecutorial misconduct, reversal would still not be required because the statements are not so egregious that a timely instruction could not have cured any prejudicial effect. *People v Mayhew*, 236 Mich App 112, 123; 600 NW2d 370 (1999).

## IV. STANDARD 4 BRIEF

Defendant filed a Standard 4 brief pursuant to Administrative Order 2004-6, Standard 4, in which he raises three other claims of error. He first argues that the evidence was insufficient and that he was therefore deprived of due process of law. We review a defendant's challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in the light most favorable to the prosecution to determine whether "a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). "Conflicts in the evidence must be resolved in favor of the prosecution." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (internal quotation marks and citation omitted). In addition, we "defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Id*.

-4-

Defendant was convicted of CSC III (sexual penetration with force or coercion) in violation of MCL 750.520d(1)(b), which prohibits sexual penetration with another person where force or coercion is used to accomplish the sexual penetration. Force or coercion includes circumstances in which the perpetrator overcomes the victim "through the actual application of physical force or physical violence." MCL 750.520b(1)(f)(*i*). Defendant admitted that he had sexual intercourse with complainant. Complainant attested to the use of force to accomplish the sexual penetration when she stated that, as she was trying to unlock her car door, defendant forcefully turned her around, held her by the neck in such a way that restricted her breathing, and after fondling and digitally penetrating her, "threw" or "pushed" her over the hood of his car, kicked her pants off, and had sexual intercourse with her. Viewed in the light most favorable to the prosecution, this evidence was sufficient to establish beyond a reasonable doubt that defendant used force to sexually penetrate complainant, and thus to support a conviction for CSC III. *Hoffman*, 225 Mich App at 111.

Defendant's argument that inconsistencies in complainant's account and the lack of medical evidence of a brutal rape rendered the evidence insufficient to prove CSC III beyond a reasonable doubt is unavailing. It is true that the complainant's testimony varied somewhat and her account differed from defendant's. However, this Court defers "to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Bennett*, 290 Mich App at 472. Further, defendant errs by assuming that medical evidence is required to support complainant's account. The testimony of the victim need not be corroborated in prosecutions under MCL 750.520d. MCL 750.520h. Nevertheless, in this case, it was. The nurse who examined complainant testified to redness in complainant's vaginal area and on her cervix consistent with trauma to the area. She also testified that complainant had a red mark on her cheek, which the jury could reasonably infer resulted from defendant's throwing or pushing her over onto the hood of his car. Thus, viewed in the light most favorable to the prosecution, and considering our deference to the trier of fact's credibility assessment, *Bennett*, 290 Mich App at 472, we conclude that the evidence presented at trial was sufficient to allow a rational trier of fact to conclude that the elements of the crime had been proven beyond a reasonable doubt. *Hoffman*, 225 Mich App at 111. Accordingly, there was no violation of due process.

Defendant next claims that he received ineffective assistance of counsel. This issue is unpreserved because defendant did not object to counsel's performance below and establish a record of facts pertaining to his allegations. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Our review, therefore, is limited to errors apparent on the record. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

The effective assistance of counsel is guaranteed by US Const, Am VI and Const 1963, art 1, § 20. To establish that a defendant's trial counsel was ineffective, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 691-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) citing *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and

that the failure was prejudicial to the defendant, *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988) judgment vacated on other grounds 436 Mich 866 (1990), or by showing a failure to meet a minimum level of competence, *People v Jenkins*, 99 Mich App 518, 519; 297 NW2d 706 (1980). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Defendant first contends that defense counsel rendered ineffective assistance by failing to argue and request an instruction on lesser-included offenses. Defendant does not say what lesser-included offense his attorney should have argued or requested an instruction on. We assume defendant is suggesting that CSC IV, which proscribes sexual contact by force or coercion, MCL 750.520e(b), should have been asserted as a lesser-included offense of the CSC III charge based on sexual penetration by force or coercion. However, the only disputed question here was whether defendant's sexual intercourse with complainant was consensual. Moreover, "[t]he decision to proceed with an all or nothing defense is a legitimate trial strategy[,]" and trial counsel is not ineffective for failing to request instructions on a lesser-included offense. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). Finally, because defendant has failed to address the merits of this assertion of error, we deem it abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Defendant next claims ineffective assistance on the ground that defense counsel did not move for a directed verdict at the conclusion of the prosecution's case in chief. MCR 2.516 provides that "[a] party may move for a directed verdict at the close of the evidence offered by an opponent."

> In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. [*Riley*, 468 Mich at 139-40.]

The trial court may not determine issues of credibility when deciding a motion for a directed verdict of acquittal, *People v Herbert*, 444 Mich 466, 474; 511 NW2d 654 (1993) overruled on other grounds *People v Lemmon*, 456 Mich 625 (1998), nor will the fact that the complaining witness in a criminal case has made conflicting statements justify the court in taking the case from the jury, See *People v Hansen*, 183 Mich 565, 567; 150 NW 159 (1914).

For defendant to prevail on this claim of error, he has to show that there was a reasonable probability that absent the error, the outcome would have been different. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The complainant testified that defendant sexually penetrated her without her consent. The nurse who examined complainant testified to redness in complainant's vagina and on her cervix consistent with trauma to the area, and reported that complainant was crying and distraught when she arrived at the emergency room. Complainant's fiancé and an officer testified to complainant's distress. Considering this evidence in the light most favorable to the prosecution, "a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Riley*, 468 Mich at 139-140. Further, given that inconsistent statements by the complaining witness are not sufficient to grant such a motion, *Hansen*, 183 Mich at 567, and that the trial court cannot make credibility

determinations when deciding a motion for a directed verdict, *Herbert*, 444 Mich at 466, there is no reasonable probability that the trial court would have granted a motion for a directed verdict. Therefore, defendant's attorney was not ineffective for not requesting the motion. *Hoag*, 460 Mich at 6.

Defendant also asserts that his counsel rendered ineffective assistance by failing to object to the prosecution's untimely notice that it was seeking an enhanced sentence based on defendant's status as a fourth habitual offender, MCL 769.12. MCL 769.13 requires prosecutors seeking sentence enhancements for habitual offenders to file a written notice of intent to do so "within 21 days after defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." MCL 769.13(1). Defendant's argument fails because he has not properly calculated the 21-day period. The starting point was defendant's arraignment or waiver of arraignment. MCL 769.13(1). The amended information that increased defendant's habitual offender status from third to fourth was filed more than 21-days after the initial information and notification. However, the prosecution filed it prior to defendant's December 2, 2013 waiver of arraignment and, therefore, it does not violate MCL 769.13(1). At the time he waived arraignment, defendant knew the charges against him and knew the prosecution was seeking an enhanced sentence on the premise that he was a fourth habitual offender. See *People v Ellis*, 224 Mich App 752, 754; 569 NW2d 917 (1997) quoting *People v Shelton*, 412 Mich 565, 569; 315 NW2d 537 (1982) (stating the purpose for prompt notification of the intent to seek an enhanced sentence is "to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense"). Because the amended information was not filed outside the statutory period, defendant's attorney was not ineffective for failing to object to the filing. *People v Torres (On Remand)*, 222 Mich App 411, 425; 564 NW2d 149 ("Defense counsel was not required to raise a meritless objection.").

There being no errors in defense counsel's performance, defendant's contention that the cumulative effect of errors deprived him of a fair trial must also fail.

Affirmed.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

-7-