PEOPLE v DALESSANDRO

Docket No. 86081. Submitted March 3, 1987, at Lansing. Decided
   January 19, 1988. Leave to appeal applied for.

Gene A. Dalessandro was convicted following a jury trial in the
   Oakland Circuit Court of assault with intent to do great bodily
   harm less than murder and child torture. The trial court,
   Steven N. Andrews, J., sentenced defendant to two concurrent
   6½ to 10 year terms of imprisonment. Defendant appealed
   raising several issues.

The Court of Appeals *held:*

1. The test set forth in *Strickland v Washington,* 466 US 668;
104 S Ct 2052; 80 L Ed 2d 674 (1984), is to be used in reviewing
claims of ineffective assistance of counsel brought under either
the United States or Michigan Constitution.

2. Defendant received ineffective assistance of counsel when
his counsel called Laurie Cormendy, defendant's girlfriend and
the mother of the physically abused child, to the stand as a
witness for defendant and subjected her to impeachment by the
only incriminating evidence against defendant. The error was
so serious that counsel was not functioning as the counsel
guaranteed by the Sixth Amendment. This error clearly preju-
diced defendant. Defense counsel's action was not sound trial
strategy as required by *Strickland.* Defendant would likely
have been acquitted but for the strategy.

3. Defense counsel committed a serious mistake in failing to

REFERENCES

Am Jur 2d, Criminal Law §§ 732 *et seq.;* 752, 753, 967 *et seq.;* 984-
987.

Am Jur 2d, Evidence §§ 249 *et seq.;* 260.

Am Jur 2d, Witnesses §§ 547 *et seq.*

When is attorney's representation of criminal defendant so deficient
   as to constitute denial of federal constitutional right to effective
   assistance of counsel—Supreme Court cases. 83 L Ed 2d 1112.

Accused's right to counsel under the Federal Constitution—Su-
   preme Court cases. 18 L Ed 2d 1420.

Modern status of rules and standards in state courts as to adequacy
   of defense counsel's representation of criminal client. 2 ALR4th
   27.

object on any of the three occasions in which the prosecutor referred to the fact that Cormendy had already been convicted.

4. A new trial is warranted because of the prosecutor's improper closing argument. In spite of defense counsel's failure to object, it would be a miscarriage of justice not to review this issue.

Reversed.

1. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

A defendant who claims ineffective assistance of counsel must show, first, that counsel's performance was deficient, that is that counsel was not functioning as the "counsel" guaranteed the defendant under the Sixth Amendment; an objective standard of reasonableness is used to determine whether defense counsel meets this threshold and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy; second, the defendant must show that the deficiency was prejudicial to the defendant.

2. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The test set forth in *Strickland v Washington,* 466 US 668 (1984), is to be used in reviewing claims of ineffective assistance of counsel brought under either the United States or Michigan Constitution.

3. CRIMINAL LAW — EVIDENCE — ACCOMPLICES.

Evidence of the conviction of another person involved in the criminal enterprise is not admissible at a defendant's separate trial.

4. CRIMINAL LAW — APPEAL — PRESERVING QUESTION.

Appellate review of alleged improprieties in a prosecutor's closing argument is precluded, absent an objection at trial, unless failure to consider the issue would result in a miscarriage of justice.

5. CRIMINAL LAW — PROSECUTING ATTORNEYS.

It is improper for a prosecutor to argue in a manner which attacks defense counsel and suggests to the jury that defense counsel is intentionally trying to mislead the jury.

6. CRIMINAL LAW — PROSECUTING ATTORNEYS.

It is improper for a prosecuting attorney to appeal to the jury to sympathize with the victim.

7. CRIMINAL LAW — PROSECUTING ATTORNEYS.

A prosecutor may not argue facts material to the case which are not in evidence.

8. CRIMINAL LAW — WITNESSES — TRIAL STRATEGY.
  The decision to call a witness is a matter of trial strategy.

9. CRIMINAL LAW — DIRECTED VERDICT.
  A defendant's motion for a directed verdict is properly denied where there is sufficient evidence from which a rational trier of fact could find the elements of the crime proven beyond a reasonable doubt.

10. CRIMINAL LAW — PROSECUTING ATTORNEYS — WITNESSES.
  A prosecutor may not intimidate a witness in or out of court.

11. CRIMINAL LAW — EVIDENCE — RELEVANT EVIDENCE.
  Evidence may be determined to be properly admitted where the evidence is relevant and is found not to be more prejudicial than probative (MRE 401, 403).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Blank,* for defendant on appeal.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and M. STEMPIEN,* JJ.

HOOD, P.J. Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, and child torture, MCL 750.136a; MSA 28.331(1). Defendant was sentenced to two concurrent 6½ to 10 year terms of imprisonment and appeals as of right. Defendant raises several issues on appeal, two of which require reversal.

Defendant's conviction arose out of the physical abuse of William Cormendy, the ten-month-old son of defendant's girlfriend, Laurie Cormendy. At the time of the incident, defendant lived with Cormendy, William, and Cormendy's two-year-old son,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Matthew, in Ferndale. On the evening of February 24, 1984, defendant and Cormendy took William to the emergency room of Providence Hospital. Medical personnel observed a three-inch laceration behind William's left knee, along with bruises in various stages of healing around his eyes and on his face, wrists, buttocks and legs. He was also malnourished and underweight. X-rays revealed six bone fractures, three in his right leg and one in each arm and the left leg. According to medical testimony, the breaks were in various stages of healing, indicating that they had occurred at different times in the past. After a police investigation, defendant and Cormendy were arrested and charged with assault with intent to commit murder, assault with intent to maim, and child torture. At trial, defendant's charge of assault with intent to commit murder was reduced to the charge of assault with intent to inflict great bodily harm less than murder.

Before defendant's trial commenced, Cormendy was tried and convicted of assault with intent to do great bodily harm, assault with intent to maim, and child torture. On August 8, 1986, we reversed her conviction in an unpublished per curiam opinion, on the ground that the court erred in admitting testimony by Cormendy's mother that Cormendy had considered aborting William. (Docket No. 82261). On February 3, 1987, the Supreme Court reversed and reinstated Cormendy's conviction on the ground that no objection to the admission of the evidence had been made. 428 Mich 858 (1987).

Defendant in the instant case first argues that he was denied the effective assistance of counsel at trial. After defendant's trial, defendant moved for

and was granted by this Court a *Ginther*[1] hearing to be held in the trial court. At this hearing, defense counsel testified along with an attorney, James Feinberg, claimed to be an expert in the field of conducting criminal trials. At the end of the *Ginther* hearing, the trial judge found that defense counsel's performance met the minimal level of performance required by the constitution, although his conduct was in some instances unprofessional and some of the legal theories advanced were "highly questionable at best."

In *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the Supreme Court set forth the test to be used in reviewing claims of ineffective assistance of counsel. First, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant under the Sixth Amendment. The objective standard of reasonableness must be used in determining whether defense counsel meets this threshold. *Strickland, supra,* pp 687-688. The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.,* p 689. Second, the deficiency must be prejudicial to the defendant. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.,* pp 691-692.

Before *Strickland* was decided, Michigan followed the two-part test of *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). According to *Garcia,* a defendant was denied the effective assistance of counsel and deserved a new trial where

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

defense counsel did not perform at least as well as a lawyer with ordinary training and skill in the criminal law, conscientiously protecting his client's interests undeflected by conflicting considerations. A defendant was also allowed relief where his trial counsel made a serious mistake, without which defendant would have had a reasonably likely chance for acquittal. *Garcia, supra,* pp 264-266. This Court has stated that *Strickland* is to be applied to claims of ineffective assistance of counsel brought under the United States Constitution, and *Garcia* is to be applied to claims brought under the Michigan Constitution, until the Michigan Supreme Court states otherwise. *People v Vicuna,* 141 Mich App 486, 498; 367 NW2d 887 (1985); *People v White,* 142 Mich App 581, 588-89; 370 NW2d 405 (1985), lv den 422 Mich 968 (1985). However, we now conclude that the *Strickland* test is the proper test to be applied in either instance, since *Strickland* was decided after *Garcia.* In *Michigan v Long,* 463 US 1032; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), the United States Supreme Court held that it would not review a decision from a state supreme court if the state court decision indicates clearly and expressly that it is based on separate, adequate and independent state grounds. *Long, supra,* p 1041. The Court stated that when a state court decision fairly appears to rest primarily on federal law or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, the Court would accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so. On the other hand, if the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent

state grounds, the Court would not review the decision. *Long, supra,* p 1041. We interpret this to mean that unless a state court decision specifically states that it is based on separate, adequate, and independent state grounds, it is overruled by an opposing decision of the United States Supreme Court. The first prong of the *Garcia* test was taken from a federal case, *Beasley v United States,* 491 F2d 687 (CA 6, 1974). The second prong was taken from a Michigan case, *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). However, a review of *Degraffenreid* reveals that it relied primarily on federal law in establishing its test. Thus, the *Garcia* two-part test fairly appears to be interwoven with federal law, and the Court did not state that it was basing its decision on separate, adequate, and independent state grounds. This leads to the conclusion that *Strickland* has overruled *Garcia,* and is the test which must be applied. We now agree with Judge MICHAEL HARRISON who adopted this view in *People v Dalton,* 155 Mich App 591, 601-603; 400 NW2d 689 (1986) (M. G. HARRISON, J., concurring).

Defendant's first allegation of ineffective assistance of counsel involves defense counsel's decision to call Cormendy to the stand as a witness for defendant.[2] Cormendy testified upon direct examination that the laceration on William's leg occurred accidently when she was holding William and a butter knife while arguing with her mother about laundry, and that William's bruises resulted from Matthew's throwing toys at him. She testified that she had never seen defendant be mean to William and that defendant was a good father to him. Upon cross-examination, the prosecutor impeached Cormendy by introducing a written state-

[2] Earlier, the prosecutor called Cormendy to the stand, but Cormendy invoked the Fifth Amendment and refused to testify.

ment which Cormendy had made to an officer of the Ferndale Police Department after she was arrested. In this statement, Cormendy stated that defendant was very mean to William, that defendant pushed her down while she was holding William, that defendant called William names, and that defendant would only give William milk when defendant wanted to. The prosecutor also introduced a tape-recorded statement Cormendy made to Oakland County Assistant Prosecutor Lawrence Kozma on December 12, 1984. The recording was played to the jury. In it, Cormendy accused defendant of causing the laceration on William's leg, of picking William up the wrong way, of calling William a "retard," of twisting William's arms and legs, of yelling at William, and of encouraging Matthew to throw toys at William. Before the tape was played, defense counsel elicited from Cormendy that a family friend had told her to call Kozma and implicate defendant. Cormendy also stated that she made the written statement while she was scared and upset. These prior inconsistent statements were the only incriminating evidence against defendant at trial.

Defense counsel testified at the *Ginther* hearing that he knew that Cormendy would be impeached by these incriminating statements. Nevertheless, he chose to put Cormendy on the stand for three reasons. First, he wanted to counter any negative inference that had occurred when, after Cormendy initially refused to testify when called by the prosecutor, the prosecutor waved a tape before the jury, asking Cormendy whether at the time her statement had been recorded by Kozma she had agreed to testify. Second, defense counsel wanted someone to testify that defendant was innocent. Third, he wanted to have someone testify in exoneration of defendant without having to call defen-

dant. He realized defendant was a special education student in high school, and he did not want defendant to have to match wits with the prosecutor upon cross-examination. Nor did he want to subject defendant to impeachment by the use of defendant's prior convictions for larceny over $100 and attempted felonious assault.

We feel that calling Cormendy to the stand, and subjecting her to impeachment by the only incriminating evidence against defendant, was so serious an error that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. This error clearly prejudiced defendant. Defense counsel admitted that there was no testimony implicating defendant other than Cormendy's statements. The only other evidence suggesting that defendant harmed William was Cormendy's mother's testimony that Cormendy informed her that defendant was always yelling at Cormendy and the children and that he called William a "retard." If Cormendy had not been called to testify, Cormendy's prior inconsistent statements would not have been revealed to the jury. Without the statements, there probably was no case against defendant. Because of the presumption of innocence and the burden of proof that a defendant must be found guilty beyond a reasonable doubt, the jury probably would not have found sufficient evidence to convict defendant. The jury's request to have the recorded statement replayed is indicative of their reliance on it. While the trial judge instructed the jury that the statements were for impeachment purposes only, the jury may have ignored the instruction, given the emotion-packed subject matter of the case and the obvious relevance of the statement.

We do not agree with the trial judge's conclusion that defense counsel's decision to call Cormendy

did not constitute ineffective assistance of counsel since it was a matter of trial strategy. Although defense counsel presented reasons for his action, his actions were not *sound* trial strategy, as required by *Strickland.* At the *Ginther* hearing, attorney Feinberg testified that defense counsel should not have called Cormendy to the stand. He felt that the recorded statement was damaging since it solidified the prosecution's entire case. We cannot ignore defense counsel's error on the basis that it was trial strategy when defendant would likely have been acquitted but for the strategy.

Although calling Cormendy to the stand was the major mistake committed by defense counsel, another serious mistake was committed when defense counsel failed to object on any of the three occasions in which the prosecutor referred to the fact that Cormendy had already been convicted. The prosecutor made these statements during his opening argument, cross-examination of Cormendy, and closing argument. Defense counsel did not object. In fact, defense counsel himself questioned Cormendy as to whether she had already been convicted of child torture. The conviction of another person involved in the criminal enterprise is not admissible at the defendant's separate trial. *People v Lytal,* 415 Mich 603, 612; 329 NW2d 738 (1982).

We also feel a new trial is warranted because of the prosecutor's improper closing argument. Initially, we note that defendant did not object to the prosecutor's closing argument. Appellate review of alleged improprieties in a prosecutor's closing argument is precluded, absent an objection at trial, unless failure to consider the issue would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977); *People v Viaene,* 119 Mich App 690, 697; 326 NW2d 607

(1982). We find that it would be a miscarriage of justice not to review this issue.

During the prosecutor's closing argument, the prosecutor made the following comments:

> This is a sham. This evidence presented by the Defense is a sham meant to mislead you. It's a bunch of lies, just like the testimony that Gene Dalessandro had nothing to do with the injuries to this child. It's disreputable really to come in front of you thirteen people and sit on that witness stand and say, "Yes, I swear to tell the truth, the whole truth and nothing but the truth," and, "Yes, these albums are albums I put together in December of '83 before William went to the hospital, and they show our loving, warm relationship."
>
> They're Defense exhibits meant to convey an impression for you thirteen of this man, proffered by the Defense and brought before you and said, "Here's our facts; look at how wonderful we are."
>
> But you see what they did with them? They're lies. They're damnable lies. They're demonstrative lies. They're fabrications of evidence. That's the way this whole thing has been run.

During rebuttal closing arguments, the prosecutor made the following comments:

> The Defense brings you lies.
>
> This exhibit, Mr. Perrotta [defense counsel] holds it up for you, "This is an exhibit; this was found in the house right after they were arrested." Yeah, like this photograph album? Was it found then, or was it written last week? Does it have the same evidentiary value as the album they put in? Does it have the same truth? Does it have the same meaning to deceive you? He talks about red herrings, he's brought a whole boat load of them in this case. He's thrown them out here in bushel baskets.

In *People v Wise,* 134 Mich App 82, 101-102; 351

NW2d 255 (1984), lv den 422 Mich 852 (1985), we stated:

> The prosecutor may not question defense counsel's veracity. . . . When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. . . . Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality.

In the instant case, the prosecutor's argument attacked defense counsel and suggested to the jury that defense counsel was intentionally trying to mislead the jury. Such argument was improper. The people cite *People v Charles,* 58 Mich App 371; 227 NW2d 348 (1975), lv den 397 Mich 815 (1976), and *People v Belen Johnson,* 62 Mich App 63; 233 NW2d 188 (1975), for the proposition that such argument is not improper. However, *Charles* and *Johnson* are distinguishable. In those cases, this Court held that an argument was not improper where the prosecutor suggested that defendant or a certain witness was lying. In the instant case, however, the prosecutor was arguing that the whole defense was "a pack of lies," thus chastising defense counsel and defendant's entire defense.

During closing argument, the prosecutor also made the following comments:

> Their intent is shown by what they did. The kid was starved. He was mistreated. He was left to lay on his head, on the back of his head until it was flat, a flattened head. *Look at the pictures of this little innocent baby. Look at the terror on his face, the sadness in those eyes.* You'll draw the conclusion what these pictures show. They show a beaten, abused child. The intent of Gene Dalessan-

dro and Laurie Cormendy is evidenced by what they did to him. . . . We've shown injuries in this case that are revolting, that are sickening. They shouldn't happen to a dog, let alone a ten month old baby. They shouldn't happen to anything. No person and no thing should be treated this way.

If [defendant] was going to go running off to the hospital, as he would have you believe, because he saw a little bit of blood that was as big as the end of your finger, he would have taken this kid to the hospital when he first started screaming out in agony when he had a broken arm, like any of you or an innocent person would do when this little babe, *totally innocent little baby was crying out in pain.*

He was in so much pain, it's a wonder he could eat. William was in so much pain from what Gene Dalessandro did to him, it's a wonder he could eat. It's a wonder he lived. It's a wonder he lived.

Now, it's important because, in a way, *that's this pitiful little ten month old child's* only way of telling the world what was being done to him by this person, Gene Dalessandro.

It is improper for the prosecutor to appeal to the jury to sympathize with the victim. *Wise, supra,* p 104. By constantly referring to "the poor innocent baby," the prosecutor was injecting the element of sympathy for William into the case. While the prosecutor did not specifically state that the jury should sympathize with William, the prosecutor's statements were obviously intended to elicit just that emotional response.

In addition, during his closing argument, the prosecutor referred to the written and recorded statements made by Cormendy. This was improper, as the evidence was used solely for impeachment. A prosecutor may not argue facts material to the case which are not in evidence. *People v Dane,* 59 Mich 550, 552; 26 NW 781

(1886); *People v Partee,* 410 Mich 871 (1980). Cormendy's prior inconsistent statements were the only incriminating evidence against defendant. By referring to them in the manner in which he did, the prosecutor suggested that the statements were substantive evidence against defendant.

Since we reverse on the issues of ineffective assistance of counsel and improper closing argument, we need only briefly address the remaining issues which may resurface in defendant's new trial.

Although it was error for the prosecutor to mention Cormendy's conviction during opening and closing argument and during cross-examination of Cormendy, *Lytal, supra,* this error standing alone would not require reversal as defendant did not object and defense counsel himself referred to the fact that Cormendy had been convicted of child torture. *People v Buckey,* 424 Mich 1, 18; 378 NW2d 432 (1985); *People v Meier,* 47 Mich App 179, 196; 209 NW2d 311 (1973).

It was not error requiring reversal for the trial court to permit Cormendy to testify against defendant's wishes. The decision to call a witness is a matter of trial strategy. *Viaene, supra,* p 693. We are not willing to set forth a rule that every time defense counsel places a witness on the stand against a defendant's wishes error requiring reversal occurs.

We do not feel that two statements made by the trial judge impermissibly shifted the burden of proof onto defendant. Both statements occurred during instances in which the prosecutor had raised relevancy objections and the judge was questioning defense counsel as to how his line of questioning related to the case. When the statements are read in the context in which they were made, it is apparent that the judge was merely

stating that defense counsel's line of questioning was irrelevant unless it tended to establish that defendant did not commit the offenses. The judge's use of the word "prove" was obviously not intended to infer that defendant bore the burden of proving his innocence. The judge clearly instructed the jury that defendant was presumed innocent until proven guilty beyond a reasonable doubt and that the people bore the burden of proving defendant's guilt. Defendant's argument that the judge failed to properly instruct the jury on the burden of proof is also without merit. The judge's instruction clearly and properly informed the jury that defendant was presumed innocent and that the people bore the burden of proof.

Contrary to defendant's assertion, we find that the trial court did not err in denying defendant's motion for a directed verdict made at the conclusion of the prosecutor's proofs. We find that there was sufficient evidence from which a rational trier of fact could find the elements of the crimes proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

The trial court did not err in ordering the court reporter to play back his backup tape of Cormendy's tape-recorded statement after the jury asked the trial court if they could rehear the tape. Such action is allowed by *People v White,* 144 Mich App 698; 376 NW2d 184 (1985).

The prosecutor did not question Cormendy in a manner which encouraged Cormendy to invoke the Fifth Amendment and refuse to testify. While it is true that a prosecutor may not intimidate a witness in or out of court, *People v Pena,* 383 Mich 402, 406; 175 NW2d 767 (1970); *People v Crabtree,* 87 Mich App 722, 725; 276 NW2d 478 (1979), there

was no such intimidation in the instant case. The prosecutor merely inquired whether Cormendy understood her rights and the effect her decision to testify might have on her own case. While it may have been unfortunate that the jury was present when Cormendy refused to testify, her decision was not the result of intimidation on the part of the prosecutor.

Although the court did err in denying defendant's motion to sequester the witnesses, this error does not require reversal since defendant was not prejudiced. Most of the witnesses were medical witnesses, and William's condition was not in issue. The primary issue at trial was whether defendant was responsible for the injuries, and the fact that the witnesses were not sequestered did not prejudice defendant in this area.

The court did not err in allowing Cormendy's mother to testify that William cried every time defendant came near him. The testimony was relevant in that it tended to show that William feared defendant. MRE 401. The testimony was not more prejudicial that probative. MRE 403. Defendant was free to explain away the testimony by evidence that William cried whenever anyone approached his crib, as evidenced by Dr. Lucas's testimony, or that the mere fact that William cried did not mean that defendant physically abused the child, or that there were other reasons for William's crying.

The prosecutor's vague reference to other "incidents" involving defendant did not constitute error requiring reversal. In the first reference, defendant's neighbor merely stated, in response to a question by the prosecutor, that he had met defendant in 1982 "in another incident." In the second reference, defense counsel's objection to reference

to an "incident" was sustained and the incident was not further mentioned. We fail to see how these slight references prejudiced defendant.

Finally, error requiring reversal did not occur when the prosecutor asked the protective services worker on redirect examination whether he believed Cormendy's statement made to the worker that everything was fine in their home. The worker was not impermissibly commenting on Cormendy's credibility; rather, he was stating whether he, himself, thought that everything was fine in the home.

Because we find that defendant did not receive the effective assistance of counsel and that defendant was denied a fair trial because of the prosecutor's improper closing argument, we reverse defendant's conviction and remand for a new trial consistent with this opinion.