# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ANDREW JOSEPH SPAGNOLA,

      Defendant-Appellant.

UNPUBLISHED
March 8, 2018

No. 330382
Macomb Circuit Court
LC No. 2014-003879-FC

Before: SHAPIRO, P.J., and GLEICHER and O'BRIEN, JJ.

O'BRIEN, J. (*dissenting*).

The majority vacates defendant's conviction based on what it believes to be "grossly improper remarks" made by the prosecutor during closing arguments that "remained uncorrected by the court." Because the prosecutor's statements did not rise to the level of prosecutorial misconduct, I respectfully dissent.

Before addressing the issue of prosecutorial misconduct, the majority's statement of facts glazes over the fact that defendant "called his wife rather than 911 when OS's neurological symptoms emerged." However, the majority does not state that defendant never called 911. At trial, defendant testified that OS appeared to be straining to pass stool, and, after the bowel movement, her legs suddenly went limp and her eyes appeared unfocused. According to defendant, he attempted to call his wife at work, but she did not respond. Defendant then attempted to call OS's grandmothers, who likewise did not respond. Defendant then called Julie McClure, a family friend and nurse, to ask what he should do, and she told him to call 911. However, defendant did not call 911. At some point during this time, OS opened her eyes and started to appear normal, but then her body became rigid and her eyes turned downward. Defendant again tried to call his wife, his wife's mother, and Henry Ford Macomb Hospital, but not 911. When defendant's wife arrived at home, defendant and his wife took OS to the emergency department. These facts are notable because, although this case largely hinged on a battle of the experts, the jury may have found defendant's decision to not call 911 probative of his guilt, which the majority entirely ignores.

Nonetheless, the crux of the majority's opinion is the prosecutor's statements. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). This Court routinely recognizes that a prosecutor is generally given "great

-1-

latitude regarding his or her arguments and conduct at trial," *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and "prosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms," *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App 64. "[A] well-tried, vigorously argued case ought not be overturned because of isolated improper remarks that could have been cured had an objection been lodged." *Ullah*, 216 Mich App at 679.

The majority first takes issue with "[s]everal of the prosecutor's statements [that] crossed the line between proper and improper appeals to the jurors' sympathy." The majority ultimately concludes that the "improper appeals to the jurors' sympathy," when standing alone, would not demand a new trial. I agree that these statements do not amount to prosecutorial misconduct, but will explain my reasoning.

"Emotional language may be used during closing argument and is an important weapon in counsel's forensic arsenal." *Ullah*, 216 Mich App at 679 (citation and internal quotation marks omitted). But, "[a] prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008) (citation omitted).

The prosecutor's statement, "For those who can't speak for themselves, use big bold voices," is not so inflammatory that it is likely to shift a correctly instructed jury's focus away from its duty to evaluate the evidence. Although the statement called attention to the emotional circumstances of a voiceless infant victim, it was restrained and dignified. Compare *People v Dalessandro*, 165 Mich App 569, 580-581; 419 NW2d 609 (1988). The prosecutor's statement that the witnesses' testimony would enable the jury to "listen to [the child's] voice" also is not improperly emotional for similar reasons. When considered in its proper context, *Dobek*, 274 Mich App 64, the statement indicated that although the child could not testify, the testimony of lay and expert witnesses would reveal what happened to her. Similarly, the prosecutor's request for the jurors to remember occasions when their patience was tried by a fussy infant was relevant to the prosecutor's theory that defendant abused the child in a moment of frustration. Defendant's alleged loss of self-control minutes before his phone calls to others was the component establishing that he perpetrated the abuse that caused the child's injuries. Stated differently, the prosecutor was commenting, albeit in what might not be described as the blandest fashion, on evidence that was already presented to the jury. See *Ullah*, 216 Mich App at 678. Viewed in this context, these arguments were not an improper attempt to invoke moral outrage against defendant.

Nevertheless, I do agree that the quotation from the Martina McBride song was excessively emotional because it invoked the image of the grave of a murdered and forgotten child, comparing the child at issue in this case to an apparently fictional dead child. Similarly, while the prosecutor's speculation that the child might wonder why she was not developing normally like her twin sister was emotional, it is my view that, in context, the prosecutor permissibly commented on how the child's injuries would impede normal development for the rest of her life. Likewise, the prosecutor's reference to the abuse as an act of betrayal by the child's father may have been somewhat emotional in tone, but it was also consistent with the

-2-

evidence and the charge against defendant. The statement, in context, *Dobek*, 274 Mich App 64, did not urge the jury to convict defendant based on sympathy for the child and anger for defendant, regardless of the evidence. In any event, the trial court could have redirected the prosecutor from any of these statements if defendant had raised a timely objection. See *Ullah*, 216 Mich App at 679. In fact, the same is true with respect to each of the allegedly improper statements outlined above. Even without an objection, however, the trial court instructed the jury that it "must not [allow] sympathy or prejudice influence your decision." "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Thus, any error in this regard was presumptively cured, and defendant has not overcome that presumption.

The majority next directs attention to the following statement from the prosecutor's rebuttal:

> Over and over and over again, always the same old dog and pony show. The same old magic show. The same old red herring. The same old smoke and mirrors. The same old "he didn't do it." He didn't prove his case.
>
> I picked, I left each one of you on this jury because you are not stupid. Don't be stupid. Don't believe what you just heard.

The majority categorizes these statements as an "attack on [defense counsel's] integrity," a charge "that defense counsel had made up his defense," and an attempt to impugn the credibility of defendant's expert witnesses. However, read in context, *Dobek*, 274 Mich App 64, the prosecutor's statement did none of these.

Of note, this Court has held that referring to an argument by defense counsel "as a 'red herring' was not improper denigration of defense counsel, but rather a fair argument regarding what the jury should believe." *People v Blevins,* 314 Mich App 339, 356; 886 NW2d 456 (2016). I see no reason why this holding would not apply to the expressions "dog and pony show," "magic show," and "smoke and mirrors."[1] The defense counsel's argument was that the prosecution did not prove its case beyond a reasonable doubt. These four brief statements were metaphors as part of the prosecutor's larger closing argument that the prosecution had proven its case beyond a reasonable doubt, notwithstanding defendant's attempts to undermine the validity of the prosecution's experts' testimony, and that defendant's presentation was unworthy of

---

[1] The majority highlights these statements, and leaves out the prosecutor's use of "red herring," to conclude that the prosecutor's argument was "nothing more than the expression of a personal belief that defense and its witness have lied or deliberately engaged in deceptive tactics." However, none of the statements highlighted by the majority are distinguishable from calling an argument a red herring, as all have the same connotation. The majority does not explain why this case differs from *Blevins*'s binding precedent that such an expression is not a denigration of defense counsel.

belief, which is not an improper attack on defense counsel or his experts. See *id.*[2] Similarly, the prosecutor's suggestion that only "stupid" persons would believe the defense theory, while not ideal, was not unfairly prejudicial because the remainder of the prosecutor's argument addressed why the theory was unbelievable in view of the evidence.[3] Moreover, the trial court instructed jurors to only decide the case based on the evidence, not on the statements of counsel. Jury instructions cure most errors, see *Abraham*, 256 Mich App at 279, and the jury is entitled to a certain amount of respect, see *People v Graves*, 458 Mich 476, 485-487; 581 NW2d 229 (1998). Therefore, a new trial is not required.

Lastly, the majority finds the prosecutor's statement, "I hope that you appreciate that I didn't extend this trial because my radiologist is in Paris," to be "highly improper." I agree with the majority to the extent that the prosecutor's statement that the radiologist was out of the country qualifies as an improper statement based on facts not in evidence, see *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001), but, viewed in context, it does not rise to a level that denied defendant a fair trial. The reason for the radiologist's absence was relevant to the trial only because defendant repeatedly insinuated during his closing argument that the prosecutor chose not to call the radiologist because his interpretation of the diagnostic images undermined the prosecution's theory. *Dobek*, 274 Mich App 64; see also *People v Thomas*, 260 Mich App 450, 454-456; 678 NW2d 631 (2004). The prosecutor's statement that the radiologist was not called because waiting for his return from Paris would have delayed the trial, while perhaps improper, was directly responsive to defendant's argument. Considering its responsive nature, as well as the trial court's instructions to only consider facts in evidence and that counsel's statements were not evidence, the prosecutor's statement did not deny defendant a fair trial.

The majority contends that the prosecutor's statement was "highly improper" because it "*implied* that had the radiologist been present at the trial, he or she would have testified in a manner consistent with the prosecution's theory of the case." (Emphasis added). Whatever implication the majority extrapolates from the prosecutor's statement is a result of the majority reading words into the prosecutor's statement. All that the prosecutor stated was that its radiologist was unable to attend and that the prosecutor did not wish to push back the trial date to

---

[2] The majority concludes that "[t]he prosecutor repeatedly charged that defense counsel had made up his defense." All of the prosecutor's statements focused on the idea that defense counsel's arguments should not be believed. See *Blevins*, 314 Mich App at 356. No plausible reading of the prosecutor's statement, especially in context of the larger closing argument, supports that the prosecutor told jurors that "defense counsel had made up his defense."

[3] The majority concludes that, with this statement, "the prosecutor improperly expressed a personal opinion of [defendant's] guilt and the character of his counsel." While the prosecutor certainly did not use the blandest terms, the message was clearly that the jurors should not believe defense counsel's argument that the prosecution did not prove its case beyond a reasonable doubt. With this statement, the prosecution in no way expressed an opinion of defendant's guilt or of defense counsel; the focus was entirely on defense counsel's argument. The majority reads additional meaning into this statement where there is none.

-4-

accommodate the radiologist; the prosecutor *did not* state that its radiologist "would have testified in a manner consistent with the prosecution's theory of the case." Therefore, the majority's statement that the prosecutor told "the jury that he had expert testimony that would have refuted the defense experts but was prevented from presenting it due to unfortunate circumstances outside of his control" is simply not supported by the prosecutor's statement or any rational reading of the record.

The majority goes on to conclude that the implication it reads into the prosecutor's statement "was deliberate and calculated misconduct." In so doing, the majority not only read its own meaning into the prosecutor's statement, but then asserts that its interpretation was, in fact, the intent of the prosecutor. The majority rests its assumptions on the fact that "this was an extraordinarily close case." I agree that this case was extraordinarily close, but that unique characteristic does not permit appellate courts to arbitrarily assign intent to actors within the proceeding. Without more, there is no basis to conclude that the prosecutor's conduct was deliberate and calculated, as the majority concludes.

Because I do not believe that the prosecutor's statements rose to the level of prosecutorial misconduct such that defendant was deprived of a fair trial, and any improper statements were sufficiently cured by the trial court's instructions, I respectfully dissent.

/s/ Colleen A. O'Brien