*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HAROLD JAY LEEMAN, JR.,

      Defendant-Appellant.

UNPUBLISHED
June 13, 2019

No. 344351
Ingham Circuit Court
LC No. 17-000321-FH

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant, Harold Jay Leeman, Jr., pocketed money from a concession stand instead of turning over the money to the nonprofit organization operating the stand to raise funds. A jury convicted defendant of embezzlement of $200 or more but less than $1,000 from a nonprofit corporation or charitable organization, MCL 750.174(4)(c). The trial court sentenced defendant to serve 18 months of probation. Defendant appeals as of right, challenging several statements made by the prosecutor during closing argument. We affirm.

## I. BACKGROUND

Defendant served as the concession chair of the Gier Park Community Center Advisory Board (the "Board"), a nonprofit organization that conducts fundraising activities to support community programs and provide scholarship opportunities for children and youth. Annual concession profits for the three to four years before defendant's trial dropped from $2,000 or more to just over $1,000. In March 2016, a board member notified the Board that defendant, for a period of a year and a half, had been turning in slips that detailed the amount of concession profits, but he had not been turning in the money. Additionally, the Board became aware that defendant was charging more than his allotted gas allowance of $25 per month on a credit card that the Board had issued to him.

The Board notified defendant of its intent to seek legal action unless he repaid the organization by August 31, 2016. Defendant responded by apologizing, requesting more time to repay the amount he owed, and proposing a payment plan. The Board entered into a payment plan with defendant, but defendant failed to pay as agreed. In November 2016, the Board again

demanded repayment. Defendant responded that he had a new job and would begin making payments before January 1, 2017. Defendant did not remit payment, and the Board contacted police. Defendant subsequently attempted to make a $200 payment by a postdated check, which the Board declined to accept.

During closing arguments at defendant's embezzlement trial, the prosecutor made several statements and arguments to which defendant did not then object, and for which defendant sought no curative instruction, but which defendant nonetheless challenges on appeal. First, the prosecutor stated that "the Board vote[d] to have a meeting and they decide[d] we need to take action. He has taken roughly our entire years' [sic] worth of money and we don't have it for the kids." Second, the prosecutor argued:

> They send him another letter. They try to give him notice. This is how we're calculating the money, the amounts. And what happens, he sends back a letter. He says, "Hey look, I'll pay you back." And now somehow he has anointed himself the king, the CFO, or whatever you want to call it as a person in charge of the money that he improperly took and tells them how he's going to repay it back.

Third, the prosecutor argued:

> Zero is paid. He didn't come to the Board and say hey look, I have more . . . issues, health issues. I'm not able to work.
>
> But I was able to go scrounge up some cans after the MSU game. I was able to go in the neighborhood and look for some bottles, whatever it is, here's $5.00. I feel bad. I took money from children in Lansing and paid my bills, or bought a computer, or whatever he converted it for and I feel bad. So, instead of entering all these agreements and excuses, and all the nonsense that he put them through, here's $5.00, here's $10.00.
>
> Every time I get an extra dollar I'll bring it to you guys. I feel horrible this happened. . . . No, string them along, string them along. Eleven months this went on before the police are contacted.

The jury convicted defendant, and he now appeals.

## II. ANALYSIS

Defendant argues that the prosecutor committed "pervasive misconduct" that deprived him of a fair trial. Defendant asserts that the prosecutor improperly appealed to the jury's emotions, improperly denigrated defendant's character, and misled the jury by referring to facts not in evidence during closing argument. Furthermore, defendant argues that cumulative error warrants the reversal of his conviction and entitles him to a new trial. At trial, defendant did not object to any of the prosecutor's arguments that he now challenges on appeal.

## A. STANDARD OF REVIEW

Initially, we note that under this Court's jurisprudence, this is not a claim of "prosecutorial misconduct" (i.e., extreme or illegal conduct), but rather one of "prosecutorial error." See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). The test for prosecutorial error is whether the prosecutor committed error that "deprived defendant of a fair and impartial trial." *Id*. at 88.

Defendant failed to object to the prosecutor's statements; therefore, we review his claims for plain error that affected his substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). To demonstrate plain error, a defendant must show that: (1) error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## B. APPEAL TO EMOTION

Defendant first argues that the prosecutor "blatantly appealed to the jurors' sympathy to obtain a conviction." Defendant points to the prosecutor's argument that defendant "has taken roughly our entire years' [sic] worth of money and we don't have it for the kids." Defendant argues that the prosecutor should have focused solely on the question whether defendant embezzled money from the Board, rather than focusing on the Board's charitable work on behalf of children.

Both the United States and Michigan Constitutions guarantee all defendants the right to a fair trial. US Const, Am XIV; Const 1963, art 1, § 17. The test for prosecutorial error "is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court considers allegations of prosecutorial error "on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *Thomas*, 260 Mich App at 454. "[T]he prosecutor is permitted to argue the evidence and all reasonable inferences arising from it." *Id*.

"A prosecutor may not appeal to the jury to sympathize with the victim." *Unger*, 278 Mich App at 237. For example, a prosecutor improperly appeals to the jury's sympathy when he suggests that defense counsel "re-victimized" the victim during the course of trial, *id*., or when he repeatedly refers to the victim as a "totally innocent little baby," *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988).

In this case, we do not agree that the prosecutor improperly appealed to the jury's sympathy to obtain a conviction. Defendant was convicted of embezzlement from a nonprofit charitable organization, MCL 750.174(4)(c). Therefore, the fact that the Board was a nonprofit or charitable organization was not only relevant, but a necessary part of the proofs regarding defendant's guilt. Furthermore, the prosecutor was describing the Board's reaction to defendant's conduct once it discovered that its annual profits from concession sales had been cut in half, and that the Board's ability to accomplish the tasks for which it had been formed—supporting community programs and scholarships for children—had been negatively impacted. The prosecutor's description of the Board's activities and its reaction to defendant's conduct was not an improper appeal to the jury's sympathies.

Nor did the prosecutor's comments substantially affect the defendant's right to a fair trial because the prosecutor's comment was isolated and timely cured. An isolated remark that does not blatantly appeal to the jury's sympathy and that is not so inflammatory as to prejudice the defendant does not rise to the level of prosecutorial error. See *People v Watson*, 245 Mich App 572, 591-592; 629 NW2d 411 (2001).

Following closing arguments, the trial court instructed the jury that the lawyers' statements and arguments were not evidence. Additionally, the trial court instructed the jury that it should only accept things the lawyers said that were supported by the evidence, or by the jury's own common sense and general knowledge. It is well-established that "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). We conclude that the trial court's instructions cured any potential prejudicial effect of the prosecutor's isolated remark and sufficiently protected defendant's right to a fair trial.

## C. DENIGRATING THE DEFENDANT

Defendant next argues that the prosecutor improperly denigrated defendant when he argued that defendant thought himself to be a "king" or "CFO" of the nonprofit organization on whose board he served. Defendant argues that the prosecutor's choice of words amounted to "foul blows" that attempted to inject issues broader than defendant's guilt or innocence into the proceedings.

A prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). In reviewing allegedly denigrating comments made against a defendant, this Court examines the remarks in context to determine whether they denied the defendant a fair trial. *Id*. at 266-267. Yet, we note that a prosecutor "has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66.

The prosecutor's comment referring to defendant as believing himself to be a "king" or "CFO" did not involve inherently prejudicial terms, such as racial or ethnic slurs. See *Bahoda*, 448 Mich at 266. Further, the comment was based on the evidence presented. Defendant repeatedly told the Board that he would repay the money that he improperly took when he had the resources to do so, and rather than complying with the Board's demands that he pay the full amount that was owed, he presented his own incremental payment plan. We conclude that the substance of the prosecutor's argument—i.e., that defendant apparently believed that he could mandate the method by which he would repay the money he had converted—was a reasonable inference based on the evidence in the record. Therefore, the statement does not qualify as prosecutorial error.

## D. ARGUMENT OF FACTS NOT IN EVIDENCE

Defendant next argues that the prosecutor argued facts not in evidence when he argued that defendant had the opportunity to make money when he was actually unemployed—i.e., that defendant could have picked up empty cans at a football game and recycled them for money to at

least partially repay the Board. Defendant argues that there was no evidence presented at trial that defendant picked up empty cans for money, and he argues that the only purpose of this argument was to make defendant look "destitute and desperate."

A prosecutor may not argue the effect of testimony that was not entered into evidence at trial. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). In this case, the prosecutor did not argue that defendant picked up empty cans for money. The prosecutor's argument simply provided an example of how defendant could have attempted to begin paying back his debt if he truly desired to do so, despite the fact that he was unemployed. The prosecutor's hypothetical example was not a statement of unsupported fact; rather, the prosecutor was highlighting the undisputed fact that defendant did not repay even $5 or $10 of the approximately $1,000 of converted funds.

## E. CUMULATIVE ERROR

Finally, defendant argues that purported cumulative error of the prosecutor's statements detailed above warrants the reversal of his conviction and entitles him to a new trial. Yet, as we have explained, the prosecutor did not improperly appeal to the jury's emotions, improperly denigrate defendant's character, or mislead the jury by referring to facts not in evidence. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle