*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARTIN RODMAN WORLEY,

Defendant-Appellant.

UNPUBLISHED
August 11, 2022

No. 356032
Monroe Circuit Court
LC No. 20-245649-FC

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of first-degree criminal sexual conduct (CSC-I) (person under 13, defendant 17 or older), MCL 750.520b(1)(a) and (2)(b), one count of CSC-I (person under 13), MCL 750.520b(1)(a), two counts of CSC-I (relationship), MCL 750.520b(1)(b), and one count of second-degree criminal sexual conduct (CSC-II) (person under 13, defendant 17 years or older), MCL 750.520c(1)(a) and(2)(b). He was sentenced to concurrent terms of 25 to 40 years' imprisonment for each CSC-I and 5 to 15 years' imprisonment for the CSC-II. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of defendant's repeated sexual assaults of the victim in 2012 and 2013, when she was 12 and 13 years old. The victim was one of six children and lived in Ohio when her parents divorced. The divorce was acrimonious, and the children were aware of the tension. Consequently, the victim did not have a close relationship with her biological father.

The victim's mother began dating defendant, who was the father of two sons. They eventually became engaged and had a daughter together, AW, in March 2011. The blended family moved near Temperance, Michigan and opened a general store. They opened an additional location that was situated nearby. Many of the children, including the victim, worked in the stores. Although the boys assisted with cleaning and objects that required heavy lifting, the victim regularly operated the cash register. The victim was the only child that was consistently paid by defendant, and he purportedly rationalized the payment to the other children by citing her skill level as a cashier and her maturity.

The victim testified that when she was 12 years old, defendant began to touch her inappropriately, engage in digital-vaginal penetration, and engage in oral sex. She delineated the locations in the stores and the home where the assaults occurred. The victim also acknowledged that defendant frequently committed the acts when customers or other family members were nearby. She even reported that a sexual act occurred while the family was watching a movie, but defendant placed a blanket over her. The victim thought that a younger sibling walked into the room during an assault, but defendant quickly covered himself up. The victim testified that the assaults occurred on at least 40 occasions and continued after she turned 13 years old. Although the victim could not recall her thoughts during the assaults, she testified that she feared defendant who generally carried a gun. She also reported that defendant groomed his groin area and did not ejaculate during the sexual assaults. The victim's mother corroborated this testimony regarding defendant's physical appearance and sexual conduct.

The relationship between the victim's mother and defendant ended in the summer of 2013. The victim's family moved away from defendant. The victim's mother continued to communicate with and saw defendant. Defendant now worked as a truck driver and would notify the victim's mother when he was in town so he could visit with AW. Because of her poor experience from her prior marriage, the victim's mother sought to foster a relationship between defendant and AW. She would send defendant pictures and keep him apprised of AW's activities.

Generally, defendant arrived for AW's visits with his girlfriend or his son, and the visits were for a short duration. The victim took steps to avoid seeing defendant. If he came to the family home to pick up AW, the victim would remain in her room.

In 2019, defendant appeared at AW's talent show. The victim attended as well. AW visited with defendant after the show. When AW returned home, it was learned that defendant wanted AW to visit with him in Florida for an extended time period. The victim feared for AW's safety and disclosed to her mother the abuse that the victim endured in 2012 and 2013. The victim's mother testified that the disclosure explained why the victim suffered from depression, weight gain, stomach issues, and sleep disturbances during that time period. The victim and her mother denied that the allegations were fabricated to provide an advantage in a custody dispute over AW or that a custody issue even existed.

Defendant did not testify on his own behalf. However, defense counsel attacked the credibility of the victim's testimony. It was questioned how the sexual abuse could occur in light of the number of family members living in a small home. Furthermore, it was noted that the family stores had security cameras. Because of the delayed disclosure of the abuse, defendant was unable produce video evidence to contradict the victim's assertions. Despite the challenge to the credibility of the victim's testimony and the proffered motivation to lie because of an alleged custody battle, defendant was convicted as charged.

During closing argument, the prosecutor stated that the victim could not recall defendant ejaculating during the sexual assaults and that he groomed his groin area. It was also noted that the victim's mother corroborated that defendant generally did not ejaculate during sexual encounters as well as his grooming habits. Additionally, the prosecutor characterized the victim as brave for coming forward years later to protect AW from abuse. After the conclusion of trial,

defendant filed a motion for a new trial or evidentiary hearing to challenge the prosecutor's statements and the admission of evidence. The trial court denied defendant's motion.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that he was denied his right to a fair trial because of the prosecution's improper appeal to jury sympathy and bolstering of the victim's credibility by referring to her as "brave" and "compelled by her need to protect her sister" in closing argument. We disagree.

To preserve a claim of prosecutorial misconduct, there must be a contemporaneous objection and request for a curative instruction. *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020).[1] Because defendant failed to contemporaneously object and request a curative instruction when the prosecution presented its closing argument at trial, this issue is unpreserved.

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). But this Court reviews unpreserved claims of prosecutorial misconduct for plain error. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). To show that the plain error affected defendant's substantial rights, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (citation omitted; alteration in original).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. "The defendant bears the burden of demonstrating that such an error resulted in a miscarriage of justice." *Id*. Claims of prosecutorial misconduct are decided on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). The prosecutor's statements are examined in context and evaluated in light of the defense arguments and the relationship of the arguments to the evidence admitted at trial. *Id*. The prosecutor has discretion in presenting the facts and reasonable inferences therefrom and need not present his argument in the blandest possible terms. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Additionally, the prosecutor may not vouch for the credibility of the witnesses and impart that he has special knowledge concerning the witnesses' truthfulness. *Id*. "It is improper for a prosecutor to seek the jury's sympathy for the victim." *People v Dobek*, 274 Mich App 58, 80; 732 NW2d 546 (2007).

---

[1] To preserve an issue for appeal, it should be raised at trial for a possible curative jury instruction and raising an issue for the first time in a motion for a new trial after the jury's verdict does not satisfy that requirement. See *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003).

Contrary to defendant's assertion, the comments of bravery and protection were not designed to elicit sympathy for the victim. Rather, in opening statement, defense counsel questioned why the victim came forward after all these years to "ruin [defendant's] life." He further questioned the physical possibility of committing abuse in a family-operated grocery store without anyone noticing and why the victim waited years to report the abuse when camera footage from the store was no longer available. In closing statements, defense counsel submitted that defendant's attempts to visit with AW were frustrated by the victim's mother. He further argued that the victim's claims were "outlandish and unbelievable" in light of the allegations that they took place in a public store and in a small home in the presence of many other family members. Thus, the defense questioned the victim's motive to come forward after all these years and the destruction of video evidence as a result. Accordingly, the prosecutor offered that the victim came forward to protect AW from abuse and characterized her actions as brave. When the prosecutor's statements are evaluated in context and in light of the defense arguments, it is apparent that they were designed to address defendant's argument that a custody issue was the motivation for the delayed reporting of the abuse, not to elicit jury sympathy. *Mullins*, 322 Mich App at 172. The prosecutor was entitled to use the term "brave" because the blandest possible argument need not be made. *Meissner*, 294 Mich App 438 at 456. Furthermore, the prosecutor's argument did not improperly vouch for the credibility of the victim and insinuate that she had special knowledge regarding the victim's truthfulness. *Id*. Therefore, these statements did not constitute prosecutorial misconduct.[2]

Further, the jury was instructed prior to deliberations that the "lawyers' statements and arguments are not evidence." It is presumed that jurors follow their instructions. *People v Stevens*, 498 Mich 162, 177; 869 NW2d 233 (2015). In the present case, there is no indication that the jurors failed to follow the instructions and construed the prosecution's closing argument to be evidence. Defendant has not shown plain error affecting his substantial rights as a result of the prosecution's statements during closing argument because no error occurred when the prosecution referred to the victim as "brave" and "compelled by her need to protect her sister."[3]

---

[2] Defendant's reliance on *People v Dalessandro*, 165 Mich App 569; 419 NW2d 609 (1988), is misplaced. In *Dalessandro*, this Court concluded that the defendant was denied a fair trial because of the prosecutor's improper closing argument. *Id*. at 585. The prosecutor repeatedly referred to the victim as "the poor innocent baby." *Id*. at 581. This Court reasoned that the prosecution was "injecting the element of sympathy" for the victim into the trial and intended to elicit an emotional response. *Id*. In the present case, however, the prosecutor characterized the victim as "brave." This isolated reference did not elicit an emotional response and inject the issue of sympathy into the proceedings. The *Dalessandro* decision is not controlling in this case.

[3] In light of our conclusion that the prosecutor did not engage in misconduct during closing argument, we need not address defendant's contention that trial counsel was ineffective for failing to object. See *People v Muhammad*, 326 Mich App 40, 58 n 7; 931 NW2d 20 (2018).

### III.  ADMISSION OF EVIDENCE

Defendant next argues that he was denied his right to a fair trial by the admission of irrelevant and prejudicial evidence regarding his personal grooming habits and sexual behavior. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).  Defendant failed to object at trial to the testimony of the victim and her mother regarding defendant's personal grooming habits and sexual habits and also to references to these habits in the prosecution's closing argument.  Accordingly, this issue is unpreserved.

"Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). MRE 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  According to MRE 402, unless otherwise barred by law or court rule, "[a]ll relevant evidence is admissible."

Defendant contends that the admission of testimony regarding his personal grooming and sexual habits, which was emphasized during closing argument, was irrelevant because it did not make the commission of the elements of the charged CSC offenses more or less probable. However, the testimony provided by the victim that defendant did not ejaculate during the sexual assaults and the corroborating testimony from her mother was relevant for the jury to consider at trial.  Further, the testimony by the victim and her mother regarding defendant's shaved groin area was also relevant.  This evidence supported the assertion that defendant was the perpetrator of the sexual assaults against the victim.  Given the victim's young age at the time of the assaults and the improbability that a young girl could know these types of intimate details about an individual without personal experience, her descriptions of defendant's personal grooming habits and sexual behavior supported the veracity of her claims.  While the victim's testimony regarding defendant's traits, as well as her mother's testimony regarding these same traits, was not dispositive as to whether defendant was the perpetrator of assaults on the victim, it certainly was probative of this fact.  See MRE 401.

Defendant also submits that testimony regarding defendant's grooming and sexual habits failed to pass the MRE 403 balancing test.  MRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Defendant asserts that testimony regarding whether he groomed his pubic hair and whether he ejaculated during sexual activity was unduly prejudicial because it led the jury to believe that these traits could definitively establish that he perpetrated the sexual assault against the victim. However, evidence need not be dispositive to be admissible.  Rather, it only must be relevant and probative.  See MRE 401.  It certainly is evident that the probative value of the victim and her mother's testimonies regarding defendant's personal grooming habits and sexual behavior was

"substantially outweighed by the danger of unfair prejudice." MRE 403. As noted above, this testimony was probative because it supported the victim's claims that defendant committed sexual assaults against her. But, as the defense noted, this evidence failed to establish the elements of the charged offenses. Any unfair prejudice from this testimony was minimal as there is no evidence that the jury failed to determine whether the victim's testimony established the charged CSC offenses.[4] Therefore, because it is not evident that the admission of testimony regarding defendant's personal grooming habits and sexual behavior was in error—nor was its admission plain error—it cannot be said that defendant's substantial rights were affected. Defendant was not denied a fair trial as a result.[5]

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica

---

[4] In the discussion of this issue, defendant repeatedly contends that the case presented a one-on-one credibility contest, and this improper evidence tipped the scales in favor of the prosecution when it was collateral and irrelevant. Defendant's credibility was never assessed because he did not testify at trial. Rather, the trial strategy challenged the credibility of the victim in light of the commission of the offenses in public or family-occupied spaces.

[5] In light of our conclusion that the admission of this evidence was not improper, we need not address the alternative argument that trial counsel was ineffective for failing to object. *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019).