*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER DEWAYNE WHITLOCK, also
known as CHRISTOPHER DWAYNE
WHITLOCK,

Defendant-Appellant.

UNPUBLISHED
May 9, 2019

No. 341560
Oakland Circuit Court
LC No. 2017-263204-FH

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of three counts of second-degree criminal sexual conduct (CSC-II) MCL 750.520c(2)(b). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 15 to 50 years for each CSC-II conviction. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

The complainant, CC, who is the daughter of defendant's girlfriend, was just short of 11 years old and in sixth grade at the time of defendant's trial. She testified at the trial that defendant was her mother's boyfriend and had moved into the family home. CC testified that defendant began calling her his secret girlfriend, and then began touching her vagina while tickling her, and asking her to tickle him back around his penis.

On one occasion, when CC's mother was gone and CC's brother was sleeping, defendant tickled CC legs under her clothes then sent her to bed in her bedroom and followed her. While CC was lying in bed, defendant asked if she ever wondered what his penis looked like and then took his belt off and made her look at it. Defendant asked if she wanted to touch it, and she did. CC testified that it felt "really weird and sort of hairy." Defendant dared her to kiss it and, when she said no, he kissed her vagina and started rubbing it. Defendant then asked if CC wanted him to kiss her as he kisses her mommy. When CC said yes, defendant kissed her with his tongue in her mouth. Defendant also asked her if she wanted to take a shower with him. While defendant

-1-

was in CC's bed and about to tuck her in, defendant said, "Oh, don't tell your mom about this because then I'll go to jail."

On another occasion, when CC was cleaning up her room, defendant came in and told her to lift up her shirt. When she did, defendant pulled down her pants and underwear. As defendant was looking at CC's private parts, he told her they were pretty. CC recalled that defendant pulled down her pants on four or five different occasions. Another time, defendant came into CC's bedroom while CC was naked after having taken a shower and proceeded to watch CC get dressed. Defendant then asked CC if she wanted to watch him get dressed, and she said no.

CC testified that the last time something happened with defendant, she had been cleaning her room. Defendant came in and offered to help. When CC stood up on her bed, defendant rubbed up against her chest with his belt and his penis inside his pants. Defendant pulled down her pants and underwear and touched her vagina with his hand. He then touched her chest on top of her clothes. Defendant told CC that there was nothing to feel "weird" about, that she was beautiful, and that he loved her and her mom. Then he went to help her mom cook dinner.

CC then told her brother what had been going on, and he told her to tell their mom. When CC asked her mom if they could talk, they went into her mom's bedroom and CC told her mom some of the things that had happened. Defendant came in and asked if they needed anything, and they said no. Then CC and her mom took defendant to work. After that, they went to the police station, where her mom talked to a police officer. The next day, someone named Jennifer[1] came to the house and CC told Jennifer what had happened. She also went to Care House and talked to Brittany.[2]

Defendant was ultimately convicted by a jury of three counts of CSC-II, and was sentenced as a fourth-offense habitual offender to 15 to 50 years' imprisonment. This appeal followed.

## II. OTHER-ACTS EVIDENCE

First, we address defendant's argument in his brief on appeal that the trial court abused its discretion by admitting other-acts evidence under MCL 768.27a. Specifically, defendant takes issue with evidence of acts that CC had alleged against him beyond those that were charged. We disagree.

"We review the trial court's ultimate decision regarding admissibility of evidence for an abuse of discretion." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the allowable range of principled outcomes. *Id*.

---

[1] Jennifer Yemec, Children's Protective Services Investigator for the Department of Health and Human Services.

[2] Brittany Bartkowiak, Child Forensic Interviewer for Care House.

MCL 768.27a[3], which supersedes MRE 404(b), provides that other-acts evidence is admissible:

> [I]n a criminal case in which the defendant is accused of committing a listed offense[4] against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered. [MCL 768.27a(1).]

In sum, MCL 768.27a allows the admission of other-acts evidence regarding other sexual abuse committed by defendant against minors to prove that defendant has the propensity to commit the charged offense. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). Therefore, CC's testimony regarding defendant asking CC if she would like to see his penis, defendant exposing his penis to CC, defendant having CC touch his penis, defendant kissing CC on the lips like he would kiss her mother, defendant touching CC's chest and breasts, defendant removing CC's clothes and looking at her vagina, and defendant touching CC's vagina with his mouth or hands would be admissible under MCL 768.27a for any matter to which it was relevant, even as propensity evidence.

MCL 768.27a is, however, subject to balancing under MRE 403, meaning that evidence admissible under MCL 768.27a may be excluded if " 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . .' " *Watkins*, 491 Mich at 481, quoting MRE 403. When evaluating whether evidence that would normally be admissible under MCL 768.27a should be excluded as unfairly prejudicial, trial courts must consider whether the evidence will "inject[ ] considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock," in addition to the danger that "marginally probative evidence will be given undue or preemptive weight by the jury." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). Moreover, in *Watkins*, our Supreme Court enumerated several considerations for the trial court to weigh when balancing the probative value versus the prejudicial effect of the evidence in question. Specifically, our Supreme Court listed:

---

[3] MCL 768.27a also includes a notice requirement. The prosecution did provide defendant with the proper notice required under the statute, and defendant does not argue otherwise on appeal.

[4] A "listed offense" is defined under the statute by reference to the Sex Offenders Registration Act, MCL 28.721 *et seq*. MCL 768.27(2)(a). Defendant does not contest that he was charged with a listed offense as defined by the statute, nor does not contest that the other-acts evidence would qualify as another listed offense.

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich. at 487-488.]

Defendant argues that the other-acts evidence admitted had little probative value and was highly prejudicial because the other acts were never charged and the only evidence of the other acts was CC's testimony. He also argues that the trial court erred by not considering certain factors provided for the consideration of trial courts by our Supreme Court in *Watkins*. However, defendant's argument rests on the fact that the trial court stated some of the alleged other-acts were dissimilar from the charged offenses. Defendant does not discuss the other five *Watkins* factors, and *Watkins* does not require a trial court to document its consideration of every factor, as defendant appears to argue. The *Watkins* Court simply listed the factors and referred to them as a non-exhaustive "list of considerations." *Watkins*, 491 Mich at 456.

We conclude that the probative value of CC's testimony was not substantially outweighed by the danger of unfair prejudice. First, the evidence was relevant because it showed defendant's propensity to sexually abuse CC, and that he was "grooming" her for the eventual sexual assaults that comprised the CSC-II charges. See *Watkins*, 491 Mich at 487 where our Supreme Court stated that "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." Second, the relevant *Watkins* factors weigh in favor of admittance. The other-acts were not remote in time, and were similar in that they involved the same victim and a series of escalating sexual acts towards or involving CC. Finally, the trial court properly instructed the jury on the proper consideration of other-acts evidence. Accordingly, the other-acts evidence was properly admitted.

## III. PROSECUTORIAL ERROR

Defendant next advances several arguments in his brief on appeal and in his Standard 4 Brief on Appeal regarding several instances of prosecutorial error[5]. Although each will be addressed in turn, we do not find any to require reversal.

Initially, we note that defendant failed to preserve this issue by objecting to any alleged prosecutorial error, and failing to request any curative instructions. *People v Bennett*, 290 Mich

---

[5] We note that defendant uses the term "prosecutorial misconduct" to describe the prosecutor's alleged errors. However, this Court has previously explained that, "although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are 'better and more fairly presented as claims of "prosecutorial error," with only the most extreme cases rising to the level of prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015), quoting *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Accordingly, we use the term "prosecutorial error" herein.

App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of prosecutorial error are reviewed for plain error. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). To show plain error, "the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *People v McLaughlin,* 258 Mich App 635, 645; 672 NW2d 860 (2003). A defendant's substantial rights are affected if the error affected the outcome of the proceedings. *Id.* Reversal is not warranted where a curative instruction could have alleviated any prejudicial effect occasioned by the prosecutor's conduct. *People v Callon,* 256 Mich App 312, 329; 662 NW2d 501 (2003).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek,* 274 Mich App 58, 63; 732 NW2d 546 (2007).

> A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. *People v Rice (On Remand),* 235 Mich App 429, 438; 597 NW2d 843 (1999). Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. *People v Thomas,* 260 Mich App 450, 454; 678 NW2d 631 (2004). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez,* 251 Mich App 10, 30; 650 NW2d 96 (2002). A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. *People v Brown,* 267 Mich App 141, 152; 703 NW2d 230 (2005). Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel. *Jones, supra* at 353. [*Dobek,* 274 Mich App at 63–64.]

## A. VOUCHING FOR THE COMPLAINANT'S CREDIBILITY

First, defendant argues in his brief on appeal that the prosecutor improperly vouched for the complainant's credibility. We disagree.

"Although a prosecutor may not vouch for the credibility of a witness, a prosecutor may argue and make reasonable inferences from the evidence to support a witness's truthfulness." *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012). A prosecutor may also argue from the facts that a particular witness *should* be believed, as long as the prosecutor does not "vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness." *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005) (internal citations omitted). However, in arguing about a witness's credibility, a prosecutor may not "place[ ] the prestige of her position or her own integrity behind the testimony." *Id.* at 633.

Here, after explaining to the jury that it would be their job to weigh and judge witness credibility, the prosecutor stated that, in this credibility contest, CC had nothing to gain by lying. He added that CC had nothing to gain from a guilty verdict except a sense of vindication and the ability to move on with her life. The prosecutor argued that defendant, on the other hand, had everything to gain from lying, and, in direct contrast to CC, did not answer questions in a straightforward manner, but argued with the attorney and attempted to evade the questions.

The prosecutor's characterization of CC's testimony as compared to defendant's – that CC had nothing to lose by testifying truthfully but defendant had everything to gain from lying – was a small portion of the prosecutor's closing argument. Moreover, the prosecutor never implied that this opinion was based on any special knowledge of the truthfulness of CC's testimony, but rather was based on the facts in evidence, and the jury should view CC's testimony as credible. Accordingly, we conclude that these statements do not constitute prosecutorial error and did not deprive defendant of a fair and impartial trial.

## B. ELICITING SYMPATHY

Second, defendant argues in his brief on appeal that the prosecutor improperly played on the jury's emotions by eliciting sympathy for CC. We disagree.

Although a prosecutor is generally afforded great latitude, the prosecutor may not appeal to the jury to sympathize with the victim. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Here, defendant takes issue with the prosecutor referring to CC as a "sweet innocent girl" in his opening statement. However, based on our review of the record, nothing indicates that referring to CC once in this way during opening statements shows the prosecutor's intent to evoke sympathy from the jury. Moreover, a contemporaneous objection paired with a curative instruction would have alleviated any prejudice. *Callon*, 256 Mich App at 329. We therefore see no error in the prosecutor's statement.

Defendant attempts to analogize his case to *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988). However, not only is *Dalessandro* no longer binding on this Court, MCR 7.215(J)(1)[6], it is factually distinguishable. In *Dalessandro*, the victim was a 10-month-old baby boy who had been severely abused by his mother and her boyfriend, the defendant. *Id*. at 571. Throughout his closing argument, the prosecutor attempted to elicit the jury's sympathy for the child by repeatedly calling the victim a "little innocent baby," a "little babe, totally innocent little baby . . . crying out in pain," and "this pitiful little ten month old child." *Id*. at 581. This Court explained that by constantly referring to the victim as "the poor innocent baby" in closing arguments, the prosecutor "injected the element of sympathy for [the victim] into the case." *Id*. Here, the prosecutor referred to CC once during opening statements as a "sweet innocent girl," he did not constantly reference her in that way. Accordingly, *Dalessandro* is distinguishable, and we conclude that the comment was harmless and lacking prejudicial effect.

## C. PRESENTING UNSUPPORTED THEORIES

Third, defendant argues in his brief on appeal that the prosecutor presented two theories for which there was no basis in fact. We disagree.

---

[6] "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1).

"A prosecutor may not make a factual statement to the jury that is not supported by the evidence." *Dobek*, 274 Mich App at 66. Prosecutors are, however, "free to argue the evidence and all reasonable inferences arising from it as they relate to [the prosecution's] theory of the case." *Id.* "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Id.* As discussed previously, it is proper for the prosecution to comment upon, and draw inferences from, any witness's testimony, and to argue that the witness is not believable. *People v Pegenau*, 447 Mich 278, 299; 523 NW2d 325 (1994).

Defendant first takes issue with the prosecution advancing the theory during closing arguments that defendant was trying to groom CC for future sexual activity by telling her that he loved her mom, he loved her, she was beautiful, and there was nothing weird about what he was doing. Specifically, the prosecutor stated during closing arguments:

> And, the last thing I want to talk to you about is really at the end of the day you need to evaluate [CC's] testimony in light of all the facts and the defendant's testimony. And, [CC's] testimony and if you think about it, it makes common sense. I mean use your own common sense and experience, that's what the Judge is going to ask you to do. Okay, have you—as jurors using your common sense, experience, ever seen a 10-year-old girl come up with complex allegations about being sexually abused and then coming up with statements such as I love your mom, I love you, you're beautiful, that there's nothing weird about this. Okay, *that is grooming behavior,* that's sophisticated behavior, that's behavior designed to establish this bond with the victim, to put himself in a position where he can test boundaries with her, he can push those boundaries, he can see the reactions, and he can have some built in excuses if she does come forward. I mean this was a complex action by the Defendant.

As the prosecution argues, this portion of the prosecutor's closing argument was based entirely on facts in evidence and the inferences arising thereof. The prosecution's theory of the case was that defendant groomed CC for sexual abuse by starting with the relatively innocuous behavior of tickling, then gradually incorporating inappropriate touch into the tickling, then escalating to behavior that would be unmistakable as criminal sexual conduct to an adult. Because the prosecutor merely used testimony to explain plaintiff's theory of the case, this argument was proper. *Id.*

Defendant next argues that the prosecutor referenced facts not in evidence during his rebuttal to defendant's closing arguments when he referred to an interview defendant gave the police that was never provided to the jury. The prosecutor argued:

> You know, compare that to what the defendant supposedly has to remember to keep his story straight. Although we didn't hear the whole statement and you didn't hear the whole statement he made to Detective Hemming, you just have the defendant's word that it was consistent with what he testified to in court. And, I think I pointed out a few of those inconsistencies and you can judge for yourself about those inconsistencies and things he did and said.

-7-

Clearly defendant's testimony concerning parts of the detective's report was in evidence, and the prosecutor did not introduce facts not in evidence. What he did was to ask the jury to infer from the inconsistencies revealed during defendant's cross-examination (between what he told the detective and what he told the jury) that there may have been other such inconsistencies as well. In short, he was arguing that the evidence gave rise to the inference that defendant was not believable. Again, this is entirely proper. *Pegenau*, 447 Mich at 299.

Additionally, prosecutor's argument was made in rebuttal to defense counsel's closing argument, where defense counsel argued that defendant's testimony was credible because it was consistent and added that it was equally important that defendant had told the jury the same thing that he had told Detective Hemming when he spoke with him in February. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek,* 274 Mich App at 64 (citation omitted).

## D. CONSCIOUSNESS OF GUILT

Fourth, in his Standard 4 Brief on Appeal, defendant argues that it was improper for the prosecutor to say or imply that defendant had consciousness of guilt because he stayed in contact with the lead investigator in the months following his interview. We disagree.

In closing arguments, the prosecutor highlighted that defendant would stay in touch with the lead detective on the case over the course of two months, even though defendant had not yet been charged. Defendant claimed it was because he wanted to know if and when a warrant would be issued so that he could turn himself in, but he also testified that he was checking in because he had an "awesome" relationship with CC's mother, and wanted to know why it was ending "just like that for no reason whatsoever." By highlighting the inconsistencies in defendant's testimony, the prosecutor did infer that defendant had a guilty conscious. However, these arguments related to matters already in evidence and to the prosecutor's theory of the case. See *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017) (quotation marks and citation omitted), where this Court articulated that "prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." According, we conclude that the prosecution made no outcome-determinative error.

## E. IMPROPER ARGUMENT REGARDING GUILT

Fifth, defendant argues in his Standard 4 Brief on Appeal that the prosecutor improperly told the jury that its verdict should be guilty despite the existence of reasonable doubt and, in so doing, exceeded the scope of defendant's closing argument. We disagree.

Defendant refers to the last statement in the prosecutor's closing argument in rebuttal: "And, you know, I think [CC] provided you with a statement, I think the other evidence in this case supports exactly what she was telling you guys it [sic] happened, and your verdict should be guilty." We have examined the prosecutor's rebuttal argument in context, in light of arguments made by the defense, and in light of the evidence introduced at trial. *Brown*, 267 Mich App at 152. First, the prosecutor responded directly to the defense attorney's theory of the case, as expressed in defendant's closing argument. Next, he addressed defense counsel's argument that

the complainant's testimony should not be believed because it was inconsistent. During this portion of his rebuttal, the prosecutor also discussed the inconsistencies in defendant's testimony, arguing that it was he, not the complainant, who was unworthy of belief. Finally, the prosecutor discussed the burden of proof because he perceived that the defense attorney was "hanging his hat" on the jury having "imaginary doubt or possible doubt." In so doing, the prosecutor explained what reasonable doubt means, stressing that the jury needed to follow Michigan law as the judge would explain it to them in the jury instructions. Accordingly, the statement "your verdict should be guilty," when viewed in context, expressed that the evidence supported a finding of guilt under the law and, therefore, the jury should follow the law and find defendant guilty. In this context, the statement was proper. See *Unger*, 278 Mich App at 236. According, we conclude that the prosecution made no outcome-determinative error.

## F. MISREPRESENTING FACTS

Finally, defendant argues in his Standard 4 Brief on Appeal that the prosecutor misrepresented the testimony of forensic interviewer Brittany Bartkowiak during closing argument. We disagree.

Bartkowiak testified that a forensic interview is designed to be "truth-seeking, developmentally sensitive, and unbiased." Bartkowiak explained that pursuant to the Michigan Forensic Interviewing Protocols, forensic interviewers "generate a set of alternative hypotheses" to aid the investigation by ruling out those alternatives if possible. In this case, there were four alternative hypotheses: nothing happened; defendant was the wrong suspect; the touches were either accidental or playful; and the child had witnessed these touches done to someone else. Bartkowiak testified that she did rule out all of these alternatives during her interview with CC. Bartkowiak explained that in the event that the child makes a disclosure of abuse, the interviewer first asks the child to say everything from the beginning to the end before asking questions and clarifying what the child said. Then they start with open-ended questions and get more specific as the interview continues because children are suggestible.

Our review of the record shows that during closing arguments, the prosecutor summarized, and commented on, Bartkowiak's testimony, stating that the forensic interviewer is not there to confirm or prove the allegations; rather, she is a neutral third party following the state-mandated interview protocol in order to test other hypotheses that might disprove the allegations. Again, it is proper for the prosecution to comment upon, and draw inferences from, any witness's testimony. *Mullins*, 322 Mich App at 173. According, we conclude that the prosecution made no outcome-determinative error.

## G. CUMULATIVE EFFECT OF ERRORS

Defendant argues that the cumulative effect of the prosecutor's misconduct requires reversal. We disagree.

"[T]he cumulative effect of a number of minor errors may in some cases amount to error requiring reversal." *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). However, where the errors (or arguable errors) were individually of little consequence, reversal is not warranted. *Id.* at 660. Here, the only prosecutorial error was the use of some prejudicial

language that did not rise to the level of denying defendant his due process right to a fair trial. Therefore, there was no cumulative error requiring reversal in this case.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan