*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 29, 2022

v

BENJAMIN ALLEN BOZILE,

Defendant-Appellant.

No. 357983
Gogebic Circuit Court
LC No. 20-000177-FC

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

A jury found defendant Benjamin Allen Bozile guilty of assault with intent to murder, MCL 750.83, and the trial court sentenced him to a prison term of 14 to 45 years. Bozile appeals as of right arguing that (1) he was entitled to an instruction on the lesser included offense of assault and battery, and counsel was ineffective by failing to request it, (2) the trial court abused its discretion in its assessment of offense variables (OVs) 4, 6, and 10, and counsel was ineffective by failing to challenge the scoring, (3) the trial court abused its discretion by denying his motion for a mistrial, (4) the prosecution argued a fact not in evidence, and counsel was ineffective by failing to object, and (5) he was unfairly prejudiced by the prosecution's untimely filing of its witness list. We affirm.

## I. BACKGROUND

Bozile's conviction arises from a September 1, 2020 stabbing that occurred in the parking lot of the Crestview Motel in Ironwood. Bozile was the newly-hired handy man at the motel, and had been residing at the motel with his two young boys for several days. The victim and his family were also residents of the motel. On the night in question, Desiree Guyette, another resident of the motel, saw Bozile carrying a duffle bag from his room to his truck. Guyette asked Bozile what he was doing. According to Guyette, Bozile "put his hood up over his head and put a mask on. Another resident of the motel, Wendy Hemmings-Davis, heard Bozile screaming at his children, who were in the truck. Hemmings-Davis asked Bozile what was wrong and whether everyone was safe. Hemmings-Davis testified that Bozile "lifted his mask, and . . . flipped up a hoodie." Bozile walked toward Hemmings-Davis before veering off and attacking the victim who, according to

-1-

Hemmings-Davis, was in the parking lot smoking a cigarette. Guyette testified that the victim was wobbling, "was so intoxicated he couldn't even move," did not make any advances toward Bozile, and "just kind of tipped over" when Bozile hit him. During the attack, Guyette heard Bozile repeatedly ask, "Why didn't you tell me you did that to the kids?"[1] After the attack, Bozile went to his truck and "spun off."

When police arrived at the motel, the victim was on the ground with "spurting blood from under his arm," and a four to five-centimeter laceration on his neck. The victim was near death when he arrived by ambulance at the hospital emergency room. He was resuscitated for three hours, and then airlifted to a hospital in Wisconsin. He sustained multiple stab wounds, a collapsed lung, a punctured liver, and a broken jaw.

Bozile's theory was that he either acted in self-defense or that he was not guilty of assault with intent to murder because the assault took place under circumstances that would reduce the charge to manslaughter if the victim had died. Specifically, Bozile asserted that his thinking was destroyed by the emotional excitement of learning that the victim might have sexually assaulted Bozile's children. The trial court instructed the jury on the offenses of assault with intent to murder and assault with intent to commit great bodily harm. The court also provided a self-defense instruction to the jury. The jury found Bozile guilty of assault with intent to murder. This appeal followed.

## II. JURY INSTRUCTIONS

Bozile argues that he is entitled to a new trial because he was denied his constitutional right to effective assistance of counsel when defense counsel failed to request an instruction on assault and battery as a lesser included offense of assault with intent to murder. We disagree.

## A. STANDARDS OF REVIEW

Claims of ineffective assistance of counsel present mixed questions of fact and constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review factual findings for clear error, while the constitutional issue is reviewed de novo. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. Because Bozile failed to move for a new trial or a *Ginther*[2] hearing below, and his motion for remand was denied on appeal, our review is limited to mistakes that are apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

---

[1] Hemmings-Davis testified that Bozile said "they told me what you did."

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Because counsel is afforded wide discretion in matters of trial strategy, a defendant must overcome a strong presumption that he was represented competently. *Unger*, 278 Mich App at 242.

Whether an offense is a lesser included offense is a question of law that we review de novo. *People v Mendoza*, 468 Mich 527, 531; 664 NW2d 685 (2003). We review a trial court's determination whether a jury instruction is applicable to the facts of a case for an abuse of discretion. *People v Gillis,* 474 Mich 105, 113; 712 NW2d 419 (2006). An abuse of discretion occurs when the circuit court chooses an outcome that falls outside the range of principled outcomes. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

## B. ANALYSIS

"[A] trial court, upon request, should instruct the jury regarding any necessarily included lesser offense . . . if the charged offense requires the jury to find a disputed factual element that is not part of the lesser included offense, and a rational view of the evidence would support it." *People v Silver*, 466 Mich 386, 388; 646 NW2d 150 (2002). The prosecution does not challenge that assault and battery is a lesser included offense of assault with intent to murder.[3] Accordingly, we assume without deciding that assault and battery is a lesser included offense of assault with intent to commit murder. See *People v Haynie*, 505 Mich 1096; 943 NW2d 383 (2020). To convict a defendant of assault with intent to murder, the jury must find that the defendant had the intent to murder the victim. MCL 750.83. To convict a defendant of assault and battery, MCL 750.81, the jury would have to conclude that defendant did not intend to murder the victim, but did either intend "to commit a battery upon . . . [the victim] or intended to make [him] reasonably fear an immediate battery." *Haynie*, 505 Mich at 1096.

The record evidence shows that Bozile stabbed the victim multiple times, causing life-threatening injuries. A witness heard Bozile repeatedly ask during the violent attack, "Why didn't you tell me you did that to the kids?" Another witness overheard Bozile state, "They told me what you did." In light of Bozile's theory that he acted under the emotional excitement of learning that the victim might have sexually assaulted Bozile's children and did not have the intent to murder, the jury was instructed on the lesser included offense of assault with intent to commit great bodily harm. Because a rational view of the evidence did not support an instruction on assault and battery, the trial court would not have been obligated to give it even if defense counsel had requested it. *Silver*, 466 Mich at 388. And defense counsel was not ineffective for failing to make a futile request. See *Head*, 323 Mich App at 539.

## III. SCORING THE GUIDELINES

Bozile argues that the trial court erred in its assessment of OVs 4, 6, and 10, and that he was denied the effective assistance of counsel by counsel's failure to object to the scoring of these offense variables. We disagree.

---

[3] The prosecution argues that "[a] jury instruction for a lesser included offense may be given when supported by a rational view of the evidence."

## A. STANDARD OF REVIEW

In reviewing a trial court's calculation of a defendant's sentencing guidelines score, we review factual determinations for clear error, and factual determinations must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

Bozile did not preserve his challenges to the scoring of the guidelines by raising the challenges at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012).[4] Unpreserved scoring challenges are reviewed for plain error. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id.* at 392-393.

## B. ANALYSIS

"A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). Michigan's rules of evidence do not apply at sentencing. MRE 1101(b)(3); *People v McFarlane*, 325 Mich App 507, 535; 926 NW2d 339 (2018). Therefore, a trial court can "properly rely on any and all record evidence in sentencing defendant . . . ." *McFarlane*, 325 Mich App at 535.

### 1. OV 4

Bozile maintains that the trial court erred by assessing 10 points for OV 4 because there was no evidence that the victim suffered serious psychological injury. MCL 777.34(1)(a) obligates a trial court to assess 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." An assessment of 10 points for OV 4 is appropriate if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247, 851 NW2d 856 (2014). The fact that the victim did not seek treatment is not conclusive. MCL 777.34(2). But "points for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).

---

[4] But Bozile preserved the argument that defense counsel was ineffective by failing to object to the scoring of the OVs by raising the arguments in his motion to remand in this Court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

In this case, the victim did not provide a victim-impact statement. At trial, the victim described a psychological injury that continued to plague him with inability to sleep at times, flashbacks to the incident that he was unable to shut out of his mind at times, and an inability to return to living at the motel where the incident occurred. Given the victim's testimony, the trial court did not err by assessing 10 points for OV 4.[5] And defense counsel was not ineffective for failing to raise a meritless challenge to the scoring of the offense variable. See *Head*, 323 Mich App at 539.

### 2. OV 6

Next, Bozile asserts that the trial court erred by assessing 25 points for OV 6, and contends it should have been scored at 10 points because his intent to injure was committed in an extreme emotional state caused by adequate provocation. OV 6 is scored for the offender's intent to kill or injure another person. MCL 777.36(1). Twenty-five points are assessed if "the offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

Because Bozile was convicted of assault with intent to murder, which requires an actual intent to kill, see M Crim JI 17.3; see also *People v Ericksen*, 288 Mich App at 195-196, and the trial court found that the assault was not premeditated, the trial court's assessment of 25 points was consistent with the jury's verdict. Bozile has not pointed to any information that was possessed by the court but not presented to the jury that would suggest the trial court should have scored OV 6 in a manner inconsistent with the jury's verdict. Once again, defense counsel was not ineffective by failing to object where no error in the scoring of OV 6 occurred. See *Head*, 323 Mich App at 539.

### 3. OV 10

Bozile further argues that the trial court erred by scoring five points for OV 10, contending that there was no evidence that the victim was intoxicated at the time of the assault. He also argues that he did not known that the victim was intoxicated and, therefore, that he did not exploit a vulnerable victim.

"Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40(1). An assessment of five points is warranted if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(1)(c). "Exploit" means to "manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" means "the readily apparent

---

[5] Assuming the trial court erred by assessing 10 points for OV 4, a deduction of 10 points from Bozile's OV score of 95 would leave him with an OV score of 85, which would still place him in Offense Level V and the sentencing guidelines range would remain the same. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); see also MCL 777.62.

susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). "The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2).

The victim testified that he purchased a fifth of whiskey on the day of the incident and that he and Bozile were "doing every shots every few minutes" until it started to become dark outside. He testified that he drank more than Bozile did and that he "got drunk." The victim also testified that he was drunk when Bozile attacked him. A witness corroborated that the victim was "really drunk" at the time of the assault, stating that he "was so drunk . . . he just kind of tipped over" after Bozile hit him. According to the presentence investigation report (PSIR), Bozile indicated that the victim started to drink the whiskey almost immediately after purchasing it, and that later in the evening the two men were drinking and smoking marijuana. Given this evidence, there is little doubt that the victim was intoxicated at the time of the assault, and Bozile knew the victim was intoxicated.

Although that fact does not *automatically* render the victim vulnerable, MCL 777.40(2), being intoxicated likely made the victim vulnerable because he was more susceptible "to injury[] [or] physical restraint" since alcohol tends to impair a person's judgment and motor skills. See MCL 777.40(3)(c); see also *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008) (noting that the victim's state of intoxication should be considered when deciding whether he or she was vulnerable). In light of the testimony and Bozile's statements included in the PSIR, the victim's susceptibility was also "readily apparent." MCL 777.40(3)(c). Finally, by taking advantage of the victim's vulnerability by attacking him in the dark with a knife, ostensibly because he believed that the victim sexually assaulted Bozile's children, Bozile exploited the victim's vulnerability "for selfish or unethical purposes." MCL 777.40(3)(b). Accordingly, the trial court did not err by assessing five points for OV 10. And defense counsel was not ineffective by failing to object where no error in the assessment of OV 10 occurred. See *Head*, 323 Mich App at 539.

## IV. PROSECUTOR MISCONDUCT

Bozile asserts that the trial court abused its discretion by denying his motion for a mistrial on the basis of prosecutor misconduct during the prosecutor's opening statement. He also argues that he was denied a fair trial because the prosecutor argued facts that were not supported by the evidence during closing arguments. We disagree.

## A. STANDARDS OF REVIEW

Defendant's claim of prosecutorial misconduct is unpreserved and reviewed for plain error affecting substantial rights. See *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). Reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion." *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001).

Prosecutor misconduct may warrant a mistrial if the misconduct deprives the defendant of a fair trial. See *People v Aceval*, 282 Mich App 379, 392-393; 764 NW2d 285 (2009).[6] Prosecutor misconduct issues are decided on a case-by-case basis by examining the pertinent portion of the record and evaluating a prosecutor's remarks in context. *People v Jackson*, 313 Mich App 409, 426; 884 NW2d 297 (2015). Generally, prosecutors are accorded great latitude regarding their arguments and conduct. *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015). Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citations omitted). "A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2011).

During opening statements, the prosecutor made the following remarks, in context:

> Now, you're going to meet the victim of this case today. . . . . I told you already he's got a girlfriend . . . three kids. He's slow. Very slow. He's on Security, ah, Supplemental Social Security, SSI, because he's learning disabled. He'll tell you he doesn't grasp concepts very well. He has a problem reading. He can't drive. His wife doesn't drive. Please accept this person for what he is and how he presents himself. And the best thing you can do is follow that instruction from the judge when it comes to determining a person's credibility. When he's asked if he molested those children and he gives you an answer, watch him and his expression. I don't know how he's going to handle the questions about what happened to him that night. Sometimes people get post-traumatic-stress-disorder from these things. He could crack. We're going to take that gamble with him, but you've got to hear the story from him. It's not fair for me to say what he's going to say. Maybe I'm not sure what he's going to say. But please take this person for what he is and understand you're dealing with a disabled person. He was in special education. He's slow. I think you'll find him to be genuine. I think you'll find him to be truthful. I think you'll find him to be likable. And after you hear his story I think you'll find what happened to him was a crime, and he dang near died.

> Okay, [prosecutor], why are we here. You make it sound so cut and dried. Let's just go home and make a decision. Well, wait, you haven't heard from the defense yet. Every prosecution has a defense, and in this case I'm going to call it the smoke screen defense. They're going to try to make him out to be a bad guy, a child molester, an alcoholic, and aggressive person. And you watch, that's what

---

[6] "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial" *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). Furthermore, a mistrial is only appropriate if no other way to remove the prejudice exists. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014).

they'll do. And you watch how he handles it and what my other witnesses say about [the victim]. I think in the end you find, wait, a minute, a smoke screen.

The prosecutor also said that when he was a child his grandmother told him that you can tell when spaghetti is done by throwing it at the refrigerator door to see if it sticks. The prosecutor said "when all is said and done in this case . . . I believe you're going to find that the defenses to this charge are not going to stick[.]"

Bozile moved for a mistrial, arguing that the prosecutor's remarks regarding a "smoke screen" defense and throwing spaghetti "to see what sticks" were disparaging of defense counsel. The trial court disagreed and denied the motion.

On appeal, Bozile cites *Watson*, 245 Mich App 572, and *People v Dalessandro*, 165 Mich App 569; 419 NW2d 609 (1988), for the proposition that "[a] prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." In those cases, this Court held that comments by prosecutors attacking the veracity of defense attorneys' arguments were improper. Unlike this case, the prosecutors in each of those cases actually suggested that the defense attorney was either attempting to deceive the jury, *Dalessandro*, 165 Mich App at 579-580, or that the defense attorney was attempting to distract the jury from the truth, *Watson*, 245 Mich App at 592-593. Bozile offers no meaningful analysis in support of his claim that the trial court abused its discretion by denying the motion for a mistrial. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Nonetheless, we conclude that the remarks were not improper. And the trial court instructed the jury that the lawyers' statements were not evidence. Further, even if the remarks were improper, "a timely objection and curative instruction could have alleviated any prejudicial effect the improper prosecutorial comments may have had. *Unger*, 278 Mich App at 238. Accordingly, the trial court did not abuse its discretion by denying Bozile's request for a mistrial.

## C. FACTS NOT SUPPORTED BY THE EVIDENCE

A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial. *Unger*, 278 Mich App at 241. Bozile argues that the prosecutor's statement during closing arguments that three witnesses testified that Bozile put on a mask before attacking the victim was not supported by the evidence presented at trial. The prosecutor concedes that only two witnesses testified about Bozile's mask. Thus, there was a plain error when the prosecutor argued a fact not in evidence. *Id.* But the error did not deny Bozile a fair trial because two witnesses[7] testified that Bozile put on a mask before the attack. We reject Bozile's additional

---

[7] Bozile also seems to contend that the prosecutor did not reasonably infer that one witness's testimony that Bozile "lifted his mask" meant that Bozile pulled his mask up over his face. He contends that the witness's testimony implied that Bozile *took off* his mask. This contention is misplaced. The assault in this case happened in September 2020, while a mask mandate was in place because of COVID-19. It has been common during the COVID-19 pandemic for people to pull down their mask and leave it hanging around the necks when not covering their face. It was

argument that defense counsel was ineffective by failing to object to the argument as Bozile has failed to show that the result of the trial would have been different had defense counsel objected. See *Head*, 323 Mich App at 539.

## V. WITNESS LIST

Bozile maintains that he was entitled to suppression of the prosecution witnesses' testimony because the prosecutor failed to timely file a witness list under MCL 767.40a(3). He argues that this deficiency required dismissal of the charges. We disagree.

A trial court must exercise discretion in fashioning a remedy for noncompliance with a discovery statute, rule, order, or agreement. *People v Williams*, 188 Mich App 54, 59-60; 469 NW2d 4 (1991). MCL 767.40a(3) provides that "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." But a prosecutor's failure to comply with these provisions does not warrant relief unless the defendant demonstrates unfair prejudice arising from the violation. *People v Callon*, 256 Mich App 312, 328-329; 662 NW2d 501 (2003); *People v Williams*, 188 Mich App 54, 59-60, 469 NW2d 4 (1991).

Although the prosecution's witness list was filed less than 30 days before trial as mandated by MCL 767.40a(3), it was timely filed under the trial court's scheduling order.[8] Bozile fails to explain how his defense might have changed if the prosecution had filed its witness list four days earlier. Absent a showing of unfair prejudice, Bozile's argument that the trial court abused its discretion fails. See *People v Callon*, 256 Mich App 312, 328-329; 662 NW2d 501 (2003); *Williams*, 188 Mich App at 59-60.

## VI. STANDARD 4 BRIEF

In his Standard 4 brief, Bozile makes several arguments that are raised for the first time on appeal. After review of each of the alleged errors, we find no merit in any of the arguments.

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica

---

reasonable for the prosecutor to interpret the witness's testimony to be consistent with that of the other witness's testimony—that Bozile pulled the mask up over his face. Bozile's additional contention that the prosecutor intentionally misled the jury to believe that Bozile was wearing a "face-concealing ski mask with eyeholes" is simply not supported by the record; the prosecutor never described the mask.

[8] The deadline set by the trial court was 26 days before trial, which defense counsel did not object to.